NO. 23-11270

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ALAN M. DERSHOWITZ,
Plaintiff-Appellant,

*versus*

CABLE NEWS NETWORK, INC.,
Defendant-Appellee.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
USDC NO. 0:20-cv-61872
HON. ANURAANG H. SINGHAL

_____

**ALAN M. DERSHOWITZ'S
APPELLANT'S OPENING BRIEF**

_____

JOHN B. WILLIAMS
WILLIAMS LOPATTO PLLC
1629 K STREET, N.W., STE 300
WASHINGTON D.C. 20006
TEL: (202) 296-1665
JBWILLIAMS@WILLIAMSLOPATTO.COM

MARK A. SCHWEIKERT*
SCHWEIKERT LAW PLLC
1111 BRICKELL AVENUE, STE 1550
MIAMI, FL 33131
TEL: (305) 999-1906
MARK@SCHWEIKERTLAW.COM

NEIL H. KOSLOWE
POTOMAC LAW GROUP, PLLC
1717 PENN. AVE, N.W., STE 1025
WASHINGTON D.C. 20006
TEL: (202) 320-8907
NKOSLOWE@POTOMACLAW.COM

**COUNSEL FOR APPELLANT
ALAN M. DERSHOWITZ**

*\* COUNSEL OF RECORD*

## <u>Certificate of Interested Persons</u>
## <u>and Corporate Disclosure Statement</u>

Pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1,

Appellant Alan Dershowitz hereby makes his disclosure of interested

persons and corporate disclosure statement:

| | |
|---|---|
| Bolger, Katherine M. | LeMieux, George S. |
| Cable News Network, Inc. | Levine, Amanda B. |
| Davis Wright Tremaine LLP | Oran, Hilary |
| Dershowitz, Alan | Potomac Law Group, PLLC |
| Edison, Eric Corey | Schweikert Law PLLC |
| Everdell, Abigail B. | Schweikert, Mark A. |
| Feder, Eric J. | Singhal, Raag, District Judge |
| Gunster, Yoakley & Stewart, P.A. | Warner Bros. Discovery Inc. ("WBD") |
| Holoszyc-Pimentel, Raphael | |
| Hunt, Patrick M., Magistrate Judge | Williams Lopatto PLLC |
| | Williams, John B. |
| Koslowe, Neil H. | |
| Kozinski, Alex | |

Dated: July 11, 2023

By: /s/ Mark A. Schweikert
Mark A. Schweikert
SCHWEIKERT LAW PLLC
1111 Brickell Avenue, Ste. 1550
Miami, Florida 33131

i

## **Statement Regarding Oral Argument**

Plaintiff-Appellant Alan Dershowitz respectfully requests oral argument.  This appeal presents important issues of constitutional law, including the deference district courts must give the Seventh Amendment and the application of the "actual malice" standard for libel of a public figure established by the Supreme Court in *New York Times v. Sullivan*, 376 U.S. 254 (1964), which oral argument would help elucidate.

## **Table of Contents**

Certificate of Interested Persons and Corporate Disclosure Statement............................................................................................i

Statement Regarding Oral Argument ........................................................ii

Table of Authorities ................................................................................. v

Statement of Subject-Matter and Appellate Jurisdiction ........................ 1

Statement of the Case .............................................................................. 1

    A.  Nature of the Case, Course of Proceedings, and Disposition Below .......................................................................................... 1

    B.  The Facts ...................................................................................... 3

    C.  The District Court's Decision ..................................................... 15

    D.  Standard of Review .................................................................... 17

Summary of the Argument ..................................................................... 17

Argument ................................................................................................ 20

    I.   THE SEVENTH AMENDMENT ENTITLED DERSHOWITZ TO HAVE A JURY DECIDE WHETHER CNN DEFAMED HIM WITH ACTUAL MALICE ................... 20

        A.  The "Actual Malice" Standard ........................................ 20

        B.  The Seventh Amendment and Rule 56 in Defamation Cases ............................................................................... 21

        C.  Dershowitz Presented Evidence of CNN's Actual Malice That a Reasonable Jury Would Find Clear and Convincing ...................................................................... 23

            1.  Falsity..................................................................... 24

            2.  The Truncated Video Clips Are Sufficient Proof of Malice................................................................ 25

3.  Coordination Provides Additional Proof of Malice . 28

4.  Foolishness, Ineptitude, and the Inability to String Together a Series of Legal Principles Can Establish Malice .................................................................. 32

5.  This Court Should Join Two Other Circuits That Have Approved Jury Trials on Malice in Highly Analogous Circumstances ........................................ 39

7.  The District Court's Reasons for Granting Summary Judgment Are Demonstrably Erroneous ................ 42

8.  Dershowitz Presented Affirmative Evidence of Malice .................................................................. 48

II.  IF THIS COURT CONCLUDES THAT THE EVIDENCE OF CNN'S CONDUCT DOES NOT SUPPORT A FINDING OF ACTUAL MALICE, *NEW YORK TIMES V. SULLIVAN* SHOULD BE RECONSIDERED ............................. 52

Conclusion ............................................................................ 55

Certificate of Compliance .................................................... 57

Certificate of Service ........................................................... 58

iv

# Table of Authorities

## Cases

*100PlusAnimal Rescue, Inc. v. Butkus*, Case No. 17-61893-Civ-
COOKE/HUNT, 2020 WL 13517903 (S.D. Fla. Sept. 30, 2020)..........23

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..................... *passim*

*Berisha v. Lawson*, 141 S. Ct. 2424 (2021)..............................................52

*Castellani v. Scranton Times, L.P.*, 124 A.3d 1229 (Pa. 2015)..............49

*Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163 (2d Cir. 2000)......49

*Compulife Software Inc. v. Newman,* 959 F.3d 1288 (11th Cir. 2020)...31

*Counterman v. Colorado*, No. 22-138, 2023 WL 4187751
(U.S. June 27, 2023)...............................................................................53

*Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969) ...................... *passim*

*Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994)..............................22, 33

*Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657 (1989) ........21

*Herbert v. Lando*, 441 U.S. 153 (1979) .................................................20

*Levine v. Meador,* No. 1:20-CV-1073, 2022 WL 18912217 (E.D. Va. Aug.
18, 2022)..................................................................................................30

*Lin Qiang v. U.S. Atty. Gen.*, 566 F. App'x 774 (11th Cir. 2014)............31

*Mahnke v. Northwest Publications, Inc.*, 160 N.W.2d 1 (Minn. 1968)...29

*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) .26-27, 35, 51

*Mei Chai Ye v. U.S. Dep't of Just.*, 489 F.3d 517 (2d Cir. 2007)............32

*Michel v. NYP Holdings, Inc.*, 816 F.3d 686 (11th Cir. 2016) ....20, 21, 42

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ......................... *passim*

*Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010)........................................26

*Rebozo v. Washington Post Co.*, 637 F.2d 375 (5th Cir. 1981)...............29

*Ross v. Bernhard*, 398 U.S. 531 (1969) ....................................................21

*Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988)
............................................................................................................... *passim*

*Schiller v. Viacom, Inc.*, Case No. 1:15-cv-22129-UU, 2016 WL 9280239,
(S.D. Fla. April 4, 2016).........................................................................23

*Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) ........................29

*Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533 (2010) ...................50

*Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*,
568 So. 2d 927 (Fla. 3d DCA 1990).......................................................23

*St. Amant v. Thompson*, 390 U.S. 727 (1968) .................20, 34, 37-38, 52

*Tah v. Global Witness Publishing, Inc.,* 991 F.3d 231 (D.C. Cir. 2021).52

*United States v. Matthews,* 53 M.J. 465 (C.A.A.F. 2000).......................32

v

*Walker v. Life Ins. Co. of N. America*, 59 F.4th 1176 (11th Cir. 2023)...17
*Wang v. Lynch*, 824 F.3d 587 (6th Cir. 2016).........................................32
*Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899 (Pa. 2007) ..........50
*Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287 (11th Cir. 2003)..................................................................................................30

## Statutes

28 U.S.C. § 1291.......................................................................................1
28 U.S.C. § 1332(a) .................................................................................1

## Constitutional Provisions

U.S. Const. Amend VII............................................................................21
U.S. Const. Article II, Section 4 ...............................................................3

## Rules

Fed. R. App. P. 32(a)..............................................................................57
Fed. R. Civ. P. 56 ....................................................................................21

## Treatises

1 E. Imwinkelried, Uncharged Misconduct Evidence § 5:28 (1999).......32
Restatement (Second) of Torts, § 580A (1977) ........................................49

## Other Authorities

166 Cong. Rec. S626 (Jan. 28, 2020)........................................................7
Carlie Porterfield, *Americans' Confidence In Media Falls To Record Lows, Poll Finds*, Forbes (July 18, 2022) .............................................54
Elena Kagan, *A Libel Story:* Sullivan *Then and Now*, 18 L. & Soc. Inquiry 197 (1993) ..........................................................................52
John Solomon, *Joe Biden's 2020 Ukrainian nightmare: A closed probe is revived*, The Hill (Apr. 1, 2019)................................................8
Oliver Darcy, *CNN settles lawsuit with Nick Sandmann stemming from viral video controversy*, CNN Business (Jan. 7, 2020).......................26

## Statement of Subject-Matter and Appellate Jurisdiction

The district court had subject-matter jurisdiction under 28 U.S.C. § 1332(a) because plaintiff Alan Dershowitz is a citizen of Florida and defendant Cable News Network, Inc. was incorporated in the State of Delaware and is headquartered in Georgia, and the amount in controversy exceeds $75,000.  (11th Cir. DE 20).  Dershowitz filed a timely notice of appeal on April 13, 2023 (DE 292) from the final judgment of the district court entered on April 4, 2023 (DE 291).  This Court has jurisdiction under 28 U.S.C. § 1291.

## Statement of the Case

### A.  Nature of the Case, Course of Proceedings, and Disposition Below

This appeal presents a simple question:  Can a multi-billion dollar news network commit defamation with impunity by showing that its highly-credentialed legal and political commentators were, in the district court's words, "foolish[], apath[etic], and [unable] to string together a series of common legal principles," when they so misrepresented plaintiff's statements to the Senate that, again in the district court words, "Dershowitz said nothing of the kind"?

Professor Alan Dershowitz brought this lawsuit on September 15, 2020 against Cable News [sic] Network, Inc. ("CNN") claiming that CNN defamed him when it aired, and posted on its website, a series of video clips accompanied by highly derogatory commentaries, misrepresenting what Dershowitz had said on the floor of the Senate while defending former President Trump during his first impeachment trial.  CNN doctored the videos to remove everything Dershowitz said that contradicted or undermined its commentators' scurrilous comments, and its commentators piled on with all manner of invective, calling Dershowitz "bonkers" and "un-American," and accusing him of echoing "what you hear from Mussolini, . . . from Hitler" and from those "who rationalized . . . genocide."[1]  The district court found that, "[o]f course, Dershowitz said nothing of the kind," and that "[n]ot one commentator reflected on whether Dershowitz'" earlier comments "would invalidate any of their commentary," but, nevertheless, granted CNN's motion for summary judgment based on the aforementioned rationale: that "foolishness, apathy, and an inability to string together a

---

[1] DE 66 at 6; DE 271-36 at 3.  "DE __" indicates the number assigned to the district court's docket entry.

series of common legal principles—does not establish actual malice

under the *Sullivan* standard."[2]

## B.  <u>The Facts</u>

On December 18, 2019, the House of Representatives adopted a

Resolution impeaching President Donald J. Trump.  The House voted

out two Articles of Impeachment: Article I for "Abuse of Power" and

Article II for "Obstruction of Congress."  The House proclaimed that the

Resolution satisfied the requirements of Article II, Section 4 of the

Constitution, namely, that the "President . . . shall be removed from

Office on Impeachment for, and Conviction of, Treason, Bribery, or

other high Crimes and Misdemeanors."

The impeachment trial began on January 22, 2020.[3]  CNN "aired

and live-streamed the trial in its entirety."[4]

On January 27, 2020, Jay Sekulow, counsel for President Trump,

introduced Alan Dershowitz to the Senate "to address the constitutional

---

[2] DE 290 at 9, 12-13.

[3] *Id.* at 4.

[4] *Id.*

issues raised by these articles [of impeachment]."[5]  Sekulow noted that Dershowitz is "the Felix Frankfurter Professor Emeritus of Harvard Law School," served as a law clerk for Judge David Bazelon of the U.S. Court of Appeals for the D.C. Circuit and Justice Arthur Goldberg of the Supreme Court, and "spent 50 years as an active faculty member at Harvard, teaching generations of law students . . . in classes ranging from criminal law to constitutional law . . . and even courses on impeachment."[6]

Professor Dershowitz told the Senate that his primary purpose was to discuss "a matter of pure constitutional law," namely:  "Do charges of abuse and obstruction rise to the level of impeachable offenses under the Constitution?"[7]  Focusing on "what the Framers of our Constitution actually chose and what they expressly and implicitly rejected," Dershowitz concluded from a close review of history that "they did not and would not accept such criteria for fear that these criteria would turn our new Republic into a British-style parliamentary

---

[5] DE 271-112 at S604, S609.

[6] *Id.* at S609.

[7] *Id.*

democracy in which the Chief Executive's tenure would be, in the words of James Madison, father of our Constitution, 'at the pleasure' of the legislature."[8]

Dershowitz recounted that Justice Benjamin Curtis, who resigned in protest from the Supreme Court after famously dissenting from the notorious *Dred Scott* decision, served as counsel for President Andrew Johnson at his impeachment trial. Justice Curtis took the position that a President could be removed from office only if he committed a crime against the United States.[9] Dershowitz also pointed out that Dean Theodore Dwight of the Columbia Law School wrote in 1867, just before the Johnson impeachment, that "unless the crime is specifically named in the Constitution"—treason and bribery—"impeachments, like indictments, can only be instituted for crimes committed against the statutory law of the United States."[10]

Unlike Justice Curtis and Dean Dwight, Dershowitz said that "criminal-like conduct akin to treason and bribery" *is* impeachable even

---

[8] *Id.* at S610.

[9] *Id.*

[10] *Id.*

if not actually a crime.[11]  For example, "if a President were to receive or give a bribe outside of the United States and outside of the statute of limitations, he could not technically be prosecuted in the United States for such a crime, but I believe he could be impeached for such a crime."[12] Similarly, "if a President committed extortion, perjury, or obstruction of justice, he could be charged with these crimes as impeachable offenses because these crimes, though not specified in the Constitution, are akin to treason and bribery."[13]  Nevertheless, Dershowitz said, "the key point in this impeachment case . . . is that purely non-criminal conduct, including abuse of power and obstruction of Congress, are outside the range of impeachable offenses."[14]  Dershowitz never suggested, implied, or hinted that a president who committed a crime like murder, extortion, or bribery could not be impeached for doing so.

---

[11] *Id.* at S611.

[12] *Id.*

[13] *Id.*

[14] *Id.*

Although CNN broadcast Dershowitz's testimony of January 27th in full, none of CNN's commentators criticized, evaluated, or even mentioned the views on impeachment that he expressed that day.

The following day, Senate Majority Leader McConnell informed Chief Justice Roberts that he and Minority Leader Schumer had agreed to conduct a "question period" on January 29, 2020, giving Senators an opportunity to ask questions about the remarks presented on January 27th.[15]  Under the procedure adopted, Senators would submit their questions in writing to the Chief Justice, and the House managers and counsel for President Trump would be "succinct" in their answers.[16] The Chief Justice noted that, during the impeachment trial of President Clinton, answers were limited to 5 minutes, and he asked both sides to abide by the same 5-minute limit.[17]

Senator Cruz submitted the following questions, which Dershowitz was asked to answer:  "As a matter of law, does it matter if there was a quid pro quo?  Is it true that quid pro quos are often used in

---

[15] 166 Cong. Rec. at S626 (Jan. 28, 2020).

[16] *Id.*

[17] *Id.* at S626-S627.

7

foreign policy?"[18]  Dershowitz prefaced his answer with "I offered you a hypothetical the other day," making it clear that his necessarily abbreviated comments would be a continuation of the testimony he had given less than 48 hours earlier rather than a free-standing disquisition.[19]  Dershowitz then zeroed in on the important distinction he had drawn between "purely non-criminal conduct," which is not impeachable, and "criminal-like conduct akin to treason and bribery," which is.  Dershowitz hypothesized a case where Congress appropriated money for Israel and the Palestinians; the President told Israel that he would withhold the money unless Israel stopped all settlement growth or he told the Palestinians he would withhold the money unless the Palestinians stopped paying terrorists; and the President said: "'Quid pro quo.  If you don't do it, you don't get the money.  If you do it, you get the money.'"[20]  Dershowitz said "[t]here is no one in this Chamber who

---

[18] DE 17-1 at S650.

[19] *Id.*

[20] *Id.*  He might also have quoted then Vice-President Biden's statement to former Ukrainian president Petro Poroshenko, where Biden said he would withhold allocated funds from Ukraine unless a prosecutor was fired.  John Solomon, *Joe Biden's 2020 Ukrainian nightmare: A closed probe is revived*, The Hill (Apr. 1, 2019), *available at*

would regard that as in any way unlawful."[21]  He repeated essentially the position he had stated on January 27th:  "**The only thing that would make a quid pro quo unlawful is if the quo were in some way illegal**."[22]

Next, Dershowitz again referred to the testimony he gave on January 27th and discussed situations where the consequence of a particular political act was not pecuniary gain but some other objective. Again, he distinguished impeachable lawful conduct from non-impeachable "unlawful" or "corrupt" conduct:

> Now, we talked about motive.  There are three possible motives that a political figure can have.  One, a motive in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, would be in his own financial interest, his own pure financial interest, just putting money in the bank.  I want to focus on the second one for just one moment.  Every public official whom I know believes that his election is in the public interest.  Mostly, you are right.  Your election is in the public interest.  If a President does something which he believes will help

---

https://tinyurl.com/y5e79ej3 ("I'm leaving in six hours.  If the prosecutor is not fired, you're not getting the money.").  While people debate Biden's motive in making this statement, there is no dispute that "no money unless you fire this prosecutor" is a quid pro quo.

[21] DE 17-1 at S650.

[22] *Id*. (emphasis added).

him get elected—in the public interest—that cannot be
the kind of quid pro quo that results in impeachment.

. . . .

Now, we may argue that it is not in the national
interest for a particular President to get reelected or
for a particular Senator or Member of Congress—and
maybe we are right; it is not in the national interest
for everybody who is running to be elected—but **for it
to be impeachable, you would have to discern
that he or she made a decision solely on the
basis of, as the House managers put it, corrupt
motives,** and it cannot be a corrupt motive if you
have a mixed motive that partially involves the
national interest, partially involves electoral, and
**does not involve personal pecuniary interest**.[23]

Toward the end of his response, Dershowitz gave an example of an

"easy" case for impeachment, namely, a quid pro quo based on conduct

akin to bribery:

If a hypothetical President of the United States
said to a hypothetical leader of a foreign country:
Unless you build a hotel with my name on it and
unless you give me a million-dollar kickback, I will
withhold the funds. **That is an easy case. That is
purely corrupt and in the purely private
interest.**[24]

---

[23] *Id.* (emphasis added).

[24] *Id.* at S651 (emphasis added).

10

In other words, such a corrupt quid pro quo would easily constitute an impeachable offense.

CNN found Dershowitz's response to Senator Cruz's questions newsworthy, warranting discussion on its website and on three of its programs: Anderson Cooper Full Circle, Erin Burnett OutFront, and New Day.[25] For each program, CNN produced and broadcast a short video clip of Dershowitz's response, and it also placed these clips on its website. The clips featured this part of Dershowitz's response:

> Every public official whom I know believes that his election is in the public interest. Mostly you are right. Your election is in the public interest. If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment.[26]

None of these clips included Dershowitz's opening caveat that "The only thing that would make a quid pro quo unlawful is if the quo were in some way illegal."[27] None included the examples Dershowitz gave distinguishing lawful (non-impeachable) conduct from unlawful or

---

[25] DE 235-1 ¶¶ 42, 52, 57, 61, 73, 80-82, 85, 87.

[26] DE 271-48; DE 271-4 at ¶ 17; DE 271-3 at ¶¶ 20-22, 25; DE 271-28, 32.

[27] *Id.*

corrupt (impeachable) conduct.[28]  None included the example

Dershowitz gave of a quid pro quo based on conduct akin to bribery,

which he said was an "easy" case for impeachment.[29]  By omitting these

portions of Dershowitz's statement, CNN made it appear he was saying

the exact opposite of what he, in fact, said.

Worse, commentators appearing on the CNN programs that

broadcast these clips, and one commentator who submitted a written

observation to CNN's website, made highly derogatory comments based

on the false representation of his position conveyed by the abbreviated

clips:

> Also, what some are calling the remarkable argument
> floated by the president's attorney Alan Dershowitz,
> some have also called it stunning.  **But one might
> reasonably call it bonkers**….  Dershowitz argues
> that if you do something to get you elected, it can't be
> impeachable.  **It's good for America if I get
> elected, so I can do anything I want that helps.
> Anything.  The implications are staggering.**

John Berman, January 29, 2020, New Day (emphasis added).[30]

---

[28] *Id.*

[29] *Id.*

[30] Berman went further:  "Dershowitz also seemed to argue that anyone
who disagrees with his legal theories, even presumably folks from past
centuries, they're all never-Trumpers.  Think about the math on that."

> This view of the executive, the executive power that **Dershowitz basically announced today** would make the President a king, it **would put the President beyond the rule of law** . . . there's **no limit** to basically how badly behaved people could be and **they can actually commit crimes** which we know, you know, **Dershowitz is essentially saying it doesn't matter what the quid pro quo is** as long as you think you should be elected.

Anne Milgram, January 29, 2020, Full Circle (emphasis added).[31]

> Having worked on about a dozen campaigns, there is always the sense that, boy, if we win, it's better for the country.  But that doesn't give you license to **commit crimes** or to do things that are unethical.  So, it was absurd.  What I thought when I was watching it was **this is un-American**.  **This is what you hear from Mussolini, what you hear from authoritarians, from Hitler,** from all the authoritarian people **who rationalized, in some cases genocide**, based what was in the public interest.

Joe Lockhart, January 29, 2020, OutFront (emphasis added).[32]

> I did not go to Harvard Law, but I did go to the University of Texas School of Law, where I studied criminal law and constitutional law, but never dreamed a legendary legal mind would set them both

---

DE 17-6 at 33-34.  Dershowitz said nothing of the sort.  A review of Dershowitz's floor statement shows that Berman invented it out of whole cloth.

[31] DE 66 ¶ 13.

[32] *Id.*

13

> ablaze on the Senate floor.  The **Dershowitz Doctrine**
> would make presidents **immune from every**
> **criminal act**, so long as they could plausibly claim
> they did it to boost their re-election effort.  Campaign
> finance laws: out the window.  **Bribery statutes:**
> **gone**.  **Extortion**: **no more**.  This is Donald Trump's
> fondest figurative dream: to be able to **shoot someone**
> **on Fifth Avenue and get away with it**.

Paul Begala, January 29, 2020, CNN.com (emphasis added).[33]

> [Dershowitz] seems to be redefining the powers of the
> President, redefining them towards infinity. . . .  If
> you look at what he says there it blows your mind.  He
> says if a President is running for re-election because
> he thinks getting elected will help America, he can do
> **anything, anything**.  **And that redefines the**
> **presidency and America**.

John Berman, January 30, 2020, New Day (emphasis added).[34]  Of

course, as the district court determined, "Dershowitz said nothing of the

kind[.]"[35]

---

[33] *Id.*

[34] *Id.*

[35] DE 290 at 12.

### C.  __The District Court's Decision__

The district court granted summary judgment to CNN on the ground that Dershowitz failed to show as a matter of law that CNN acted with actual malice, as required by *New York Times v. Sullivan*, 376 U.S. 254 (1964).[36]  It held:  "[T]he evidence before the Court—while establishing foolishness, apathy, and an inability to string together a series of common legal principles—does not establish actual malice under the *Sullivan* standard."[37]

The district court rejected Dershowitz's argument that "a jury could reasonably rule in his favor because CNN had notice of Dershowitz's actual views on impeachment but failed to include them."[38]  It understood that Dershowitz was referring to his testimony "[t]wo days earlier, on January 27, 2020," when he testified that "a crime or crime-like conduct is necessary for impeachment."[39]  The district court criticized the commentators for "sp[ea]k[ing] about

---

[36] *Id.* at 9.

[37] *Id.*

[38] *Id.*

[39] *Id.*

[Dershowitz's] January 29 comments without contextualizing the comments with what had been said on January 27."[40]  And the court sternly rebuked CNN's commentators for their false and out-of-context remarks:

> Paul Begala . . . said the "Dershowitz Doctrine would make Presidents immune from every criminal act." **Of course, Dershowitz said nothing of the kind**, there is no Dershowitz Doctrine, and as most law students know, reading a brief doesn't tell you about the whole case.  Joe Lockhart said Dershowitz okayed "commit[ting] crimes."  John Berman said Dershowitz advocated a President could "do anything, anything."  Anderson Cooper reported that Dershowitz said "they can actually commit crimes."  All this in the context of an answer to Senator Cruz' question, but none of it as the be all and end all on impeachment law analysis. **Not one commentator reflected on whether Dershowitz' January 27 arguments or the law on impeachment regarding high crimes and misdemeanors would invalidate any of their commentary**.[41]

Nevertheless, the district court concluded that, because, "when Dershowitz spoke on January 29, 2020, he did not qualify his statements with what he said two days earlier; CNN's failure to add a two-day old qualification is not evidence that would show actual

---

[40] *Id.* at 12.

[41] *Id.* at 12-13.

malice."[42]  In the district court's view, "there is no requirement under the First Amendment for a reporter to talk about everything Dershowitz has *ever* said about impeachment or even all the various ways one can be impeached."[43]  Rather, "CNN's subjective view of Dershowitz's January 29 statements as new and newsworthy and different from his January 27 statements is what matters under the *Sullivan* standard."[44]

### D.  Standard of Review

This Court reviews *de novo* the district court's grant of summary judgment to CNN, viewing all the evidence and drawing all reasonable inferences in the light most favorable to Dershowitz.  *Walker v. Life Ins. Co. of N. America*, 59 F.4th 1176, 1185 (11th Cir. 2023).

## Summary of the Argument

CNN and its commentators gleefully undertook to demolish the hard-earned reputation of one of America's foremost legal experts by deliberately misrepresenting his testimony during the first Trump

---

[42] *Id.* at 10.

[43] *Id.* at 10-11 (emphasis added).

[44] *Id.* at 11.

impeachment trial.  Commanded by CNN's president, they cast Dershowitz as "crazy" across four clips (one of which actually called him "bonkers") that the district court charitably described as a product of "foolishness, apathy, and an inability to string together a series of common legal principles."  As the district court found, the clips and commentary falsely attributed to Dershowitz dangerous and absurd arguments he did not make.  The repetition of exactly the same error by highly credentialed journalists four times, after being instructed from the top, provides more than enough evidence for a jury to conclude that CNN pushed this narrative knowingly or with reckless disregard of its falsity.

During depositions, CNN's employees actually admitted they knew Dershowitz did not say what they represented him to have said.  Yet they never produced any retraction; they offered no modification of their caricature.  Nor is this the first time CNN has been accused of manipulating video clips to tell a false story about a person advancing what they regard as a conservative position.  CNN's then-president may have been fired, but the victims of his smear campaigns are still living with the consequences.

18

The question before the Court is not whether Dershowitz has produced ironclad, irrefutable, absolute proof that CNN acted with actual malice.  Such proof almost never turns up.  The question is whether he has come forward with enough proof to exercise his Seventh Amendment right to trial by jury.  Sister courts of appeals have said yes on similar facts, and Dershowitz respectfully suggests that this Court join them.

In the alternative, this Court should, like the district court below, encourage the Supreme Court to revisit the *New York Times v. Sullivan* actual malice standard, and especially the requirement to show malice by clear and convincing evidence at the summary judgment stage.  Journalists now clamor all too eagerly to portray themselves as incompetent and lazy for, as between stupidity and malice, *Sullivan* has been wrongly construed to prefer the former.  But, after 60 years of this incentive structure, incompetence has become more than a litigation strategy; it has become the news industry's standard of care.  *Sullivan*'s effort to protect journalism has instead decimated it.  It is long past time to rebalance the First Amendment and vindicate the rights of egregiously defamed citizens.

## **Argument**

### I.    THE SEVENTH AMENDMENT ENTITLED DERSHOWITZ TO HAVE A JURY DECIDE WHETHER CNN DEFAMED HIM WITH ACTUAL MALICE

Dershowitz presented evidence based on which a reasonable factfinder might find clearly and convincingly that CNN defamed him with actual malice.  That finding turns largely on credibility determinations and the legitimate inferences that can be drawn from the facts.  The Supreme Court has held that those "are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The district court erred by usurping the jury's functions.

### A.  The "Actual Malice" Standard

The Supreme Court held in *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) that "[p]rofessions of good faith" alone will not protect a defamation defendant.  "[R]ecklessness may be found where there are obvious reasons to doubt the veracity" of the challenged statement.  *Id.*; *accord, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016).

Moreover, given that a defamation plaintiff will "rarely be successful in proving awareness of falsehood from the mouth of the defendant himself," *Herbert v. Lando*, 441 U.S. 153, 170 (1979), such a

20

plaintiff "is entitled to prove the defendant's state of mind through circumstantial evidence." *Harte-Hanks Commc'ns Inc. v. Connaughton*, 491 U.S. 657, 668 (1989). This showing can be made expressly or it "can be inferred in certain circumstances." *Michel*, 816 F.3d at 703. Actual malice can be inferred when a defendant "simply delete[s] language that cast[s] a very different and more benign light on the facts he reported . . . ." *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069, 1092 (3d Cir. 1988). *Accord Goldwater v. Ginzburg*, 414 F.2d 324, 337, 340 (2d Cir. 1969) (malice can be inferred when defendant "at times . . . would quote one part of an article without quoting another part which might tend to qualify or contradict the part quoted").

**B.  <u>The Seventh Amendment and Rule 56 in Defamation Cases</u>**

"[T]he Seventh Amendment . . . entitle[s] the parties to a jury trial in actions for . . . libel and slander." *Ross v. Bernhard*, 398 U.S. 531, 533 (1969). Accordingly, Dershowitz has a presumptive Seventh Amendment right to have a jury decide whether CNN defamed him with actual malice.

The Seventh Amendment right to a jury trial only gives way to Fed. R. Civ. P. 56 when there is no evidence from which a reasonable

jury might infer that the defendant acted with malice.  In *Liberty Lobby*
the Supreme Court explained that, even in defamation cases brought by
public figures, trial courts may not usurp the jury's function:

> **Credibility determinations, the weighing of the
> evidence, and the drawing of legitimate
> inferences from the facts are jury functions, not
> those of a judge.** . . .  The evidence of the non-
> movant is to be believed, and all justifiable inferences
> are to be drawn in his favor. . . .  Neither do we
> suggest that the trial courts should act other than
> with caution in granting summary judgment or that
> the trial court may not deny summary judgment in a
> case where there is reason to believe that the better
> course would be to proceed to a full trial.

477 U.S. at 255 (emphasis added).

Moreover, "the plaintiff, to survive defendant's motion, need only
present evidence from which a jury **might** return a verdict in his favor.
If he does so, there is a genuine issue of fact that requires a trial."  *Id.*
at 257 (emphasis added).  This Court and Florida courts have held in a
number of recent cases involving private and public plaintiffs that
"whether . . . conduct is merely negligent or rises to the level of
recklessness is an issue for the jury," precluding summary judgment for
defendants.  *Hammer v. Slater*, 20 F.3d 1137, 1143 (11th Cir. 1994); *see
100PlusAnimal Rescue, Inc. v. Butkus*, Case No. 17-61893-Civ-

22

COOKE/HUNT, 2020 WL 13517903, at \*8-9 (S.D. Fla. Sept. 30, 2020);

*Schiller v. Viacom, Inc.*, Case No. 1:15-cv-22129-UU, 2016 WL 9280239,

at \*7-8 (S.D. Fla. April 4, 2016); *Southern Air Transport, Inc. v. Post-*

*Newsweek Stations, Florida, Inc.*, 568 So. 2d 927, 928-929 (Fla. 3d DCA

1990).

**C.** **Dershowitz Presented Evidence of CNN's Actual Malice That a Reasonable Jury Would Find Clear and Convincing**

Dershowitz presented evidence that CNN and its commentators (i)

acted "'with knowledge that [their statements were] false,'" (ii) had

"obvious reasons to doubt the veracity" of their statements, and (iii)

"delete[d] language that cast a very different and more benign light on

the facts [CNN] reported . . . ." *Schiavone*, 847 F.2d at 1092. Based on

this evidence and the witnesses' credibility, "a jury **might**"—and indeed

should—"return a verdict in his favor." *Liberty Lobby,* 477 U.S at 257

(emphasis added).

23

### 1. Falsity

CNN's commentators proclaimed to millions of world-wide viewers and web-page readers that Dershowitz had argued that presidents who engage in criminal conduct cannot be impeached, so long as they act in their own electoral interest.  They relied on truncated clips of his comments that had been artfully edited to omit what he said that contradicted their claim.  This grotesque caricature of Dershowitz's presentation to the Senate lent false credence to CNN's commentators and enabled them to make the outlandish claim that Dershowitz had said a president could "shoot someone on Fifth Avenue and get away with it."[45]

But, as the district court determined, "Dershowitz said nothing of the kind."[46]  Rather, in the words of the district court, CNN and its commentators made their false statements out of "foolishness," "apathy," and an "inability to string together a series of common legal

---

[45] DE 66 ¶ 13 (Paul Begala).

[46] DE 290 at 12.

principles."[47]  A jury could reasonably conclude that they just *played* dumb when forced to explain themselves under oath.

### 2.  The Truncated Video Clips Are Sufficient Proof of Malice

Dershowitz showed that, in CNN's clips of his January 29th remarks, it intentionally eliminated (i) his opening caveat that "**[t]he only thing that would make a quid pro quo unlawful is if the quo were in some way illegal**" (emphasis added); (ii) the examples he gave of lawful (non-impeachable) conduct versus unlawful or corrupt (impeachable) conduct; and (iii) his example of a quid pro quo based on conduct akin to bribery, which he said was an "easy" case for impeachment.

A reasonable jury could find that, by failing to include in the four clips Professor Dershowitz's initial qualifier or his iterations of it on the same day as part of the same statement, or by failing at least to acknowledge them in their commentaries, CNN radically altered Dershowitz's words "result[ing] in a material change in the meaning conveyed by [his] statement[s]," which the Supreme Court has held amounts to actual malice.  *Masson v. New Yorker Magazine, Inc.*, 501

---

[47] *Id*. at 9.

25

U.S. 496, 517 (1991). As the Ninth Circuit noted in interpreting *Masson*, the Supreme Court's "observations are particularly relevant here because [plaintiff's] quotation was published using a medium in which the viewer actually sees and hears the plaintiff utter the words." *Price v. Stossel*, 620 F.3d 992, 1002 (9th Cir. 2010). A jury might even weigh that this is not the first time CNN has been credibly accused of manipulating videos to create a false impression. *E.g.* Oliver Darcy, *CNN settles lawsuit with Nick Sandmann stemming from viral video controversy*, CNN Business (Jan. 7, 2020), *available at* https://tinyurl.com/ye255h94.

The district court's stated reason for reaching the opposite conclusion was that "[t]he producers and hosts responsible for each of the four clips at issue all testified that they considered Dershowitz' comments newsworthy; they did not consider the Illegal Quo Line as a qualification or alteration of the Public Interest Argument; and they believed the clips as presented were fair and accurate."[48] In other words, the district court held that CNN and its commentators acted without

---

[48] DE 290 at 10.

malice because *they* claimed to believe that what they reported was a rational interpretation of what Dershowitz had said.

That is not the standard.  Indeed, the Ninth Circuit adopted this very rationale in its initial *Masson* opinion but the Supreme Court categorically rejected it.  *Masson*, 501 U.S. at 518.  As the Court explained, the test is not whether a defamation defendant believes the doctored statement is a reasonable interpretation of what the plaintiff said but, rather, "the meaning a statement conveys to a reasonable reader."  *Id.* at 515.  Under the Supreme Court's ruling in *Masson*, Dershowitz was entitled to have a jury compare his January 29th response with CNN's truncated version and the calumnious description of it by its anchors and commentators, and determine whether "a reasonable reader" or viewer would consider the two statements to have the same meaning.  This alone justifies reversing the district court and remanding for trial.  But there is much more.

### 3. Coordination Provides Additional Proof of Malice

According to the district court, there was "no proof" in the record "that any of CNN's commentators or producers either entertained 'serious doubts as to the veracity' of the reports or were 'highly aware that the account was probably false.'"[49]  The district court noted that "CNN has produced undisputed evidence that each of the challenged publications were individually edited and produced; there was no scheme to 'falsely paint Dershowitz as a constitutional scholar and intellectual who had lost his mind.'"[50]  The district court added that "CNN has produced undisputed evidence that each of the challenged publications were individually edited and produced" and "[t]he producers and hosts responsible for each of the four clips at issue all testified that they . . . believed the clips as presented were fair and accurate. . . .  Dershowitz has not produced any evidence to contradict this."[51]

---

[49] *Id.*

[50] *Id.* at 9-10.

[51] DE 290 at 10.

But Dershowitz *did* present evidence that CNN's various clips and presentations were not the result of independent judgments. Rather, they were part of a coordinated effort, spearheaded by Jeff Zucker, CNN's then-president. Zucker e-mailed his anchors and commentators saying that Dershowitz is "crazy," and proclaimed during conference calls that Dershowitz was advancing a view that the President is "king" and "can do what he wants."[52] Actual malice can be found when the publisher chooses to focus on an angle to make its story "seem more convincing or condemnatory than it is." *Sharon v. Time, Inc.*, 599 F. Supp. 538, 582 (S.D.N.Y. 1984); *see also Rebozo v. Washington Post Co.*, 637 F.2d 375, 382 (5th Cir. 1981); *Mahnke v. Northwest Publications, Inc.*, 160 N.W.2d 1, 9-10 (Minn. 1968). Zucker gave marching orders about how the story should be spun. A jury could reasonably find that CNN's foot soldiers fell in line.

That CNN's video clips, which supposedly were "individually edited," were edited the same way, and the remarkable similarity between the statements of various commentators—omitting the same language and spinning precisely the same false narrative about what

---

[52] DE 260-2 at 26 (¶¶ 14-16).

29

Dershowitz supposedly said—is additional evidence of coordination. A reasonable jury might well conclude that CNN's producers and highly-credentialed commentators were not at all foolish, apathetic and inept in precisely the same way but, rather, colluded with each other and CNN staff to smear Dershowitz, whom they all hated for sticking to his principles and defending Trump.[53]

This Court and others have held that strikingly similar conduct is a rational basis for inferring collusion. *See, e.g., Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1301 (11th Cir. 2003) (recognizing that evidence of conscious parallelism can, together with other evidence, support an inference of price fixing); *Levine v. Meador,* No. 1:20-CV-1073, 2022 WL 18912217, at *5 (E.D. Va. Aug. 18, 2022) ("Here, the allegations of a conspiratorial agreement, coordinated actions, and the 'time and place' of relevant conduct—namely the publication of defamatory statements with similar content in a similar time period—appropriately give rise to an inference that Defendant

---

[53] Not that there is any requirement to show coordination. But if the jury does find there was coordination, it would certainly be an important step toward finding they were malicious defamers rather than bumblers.

expressly or tacitly conspired with Casto/JCP to defame Plaintiff.").

That CNN's various commentators tracked each other so closely—all

misinterpreting Dershowitz's statement in precisely the same way—

itself casts doubt on CNN's assertion, taken by the district court at face

value, "that each of the challenged publications were individually

edited and produced."[54]  *See, e.g., Compulife Software Inc. v. Newman,*

959 F.3d 1288, 1301 (11th Cir. 2020) ("Factual copying—the question

whether the defendant actually used the plaintiff's material . . . may be

inferred from indirect evidence demonstrating that the defendant had

access to the copyrighted work and that there are probative similarities

between the allegedly infringing work and the copyrighted work."

(internal quotation marks omitted)); *Lin Qiang v. U.S. Atty. Gen.*, 566

F. App'x 774, 776 (11th Cir. 2014) (using "substantial similarity in

word choice and sentence structure" to "support[] the decision to use

similarity as one reason for discrediting the letters").  The similarity

between CNN's various accounts, and their consistency with the

narrative engineered by Zucker, is a legitimate basis for a trier of fact

to conclude that CNN's witnesses are not credible and that their self-

---

[54] DE 290 at 9.

exculpatory testimonies are false.  *Wang v. Lynch*, 824 F.3d 587, 588 (6th Cir. 2016) ("An immigration judge may properly take such remarkably similar facts as some evidence that an applicant is not telling the truth, at least where the applicant has been given a chance to explain the suspicious similarities."); *Mei Chai Ye v. U.S. Dep't of Just.*, 489 F.3d 517, 519 (2d Cir. 2007) ("[I]n most cases, it is reasonable and unproblematic for an IJ to infer that an applicant who herself submits the strikingly similar documents is the common source of those suspicious similarities."); *United States v. Matthews,* 53 M.J. 465, 470 (C.A.A.F. 2000) (noting the "doctrine of chances," which "posits that 'it is unlikely that the defendant would be repeatedly innocently involved in the similar suspicious situations.'" (quoting 1 E. Imwinkelried, Uncharged Misconduct Evidence § 5:28 at 78 (1999))).

### 4. **Foolishness, Ineptitude, and the Inability to String Together a Series of Legal Principles Can Establish Malice**

The district court erred even by its own standard.  It held that "the evidence before the Court—while establishing foolishness, apathy, and an inability to string together a series of common legal principles—does

not establish actual malice under the *Sullivan* standard."[55]  But *Sullivan* was crafted to protect responsible journalists from ruin by frivolous defamation lawsuits.  Nothing in the *Sullivan* line of cases even remotely suggests that it was meant to protect and encourage foolish and apathetic journalists who just make up stories instead of reporting facts.

As for the "inability to string together a series of common legal principles," it matters a great deal that CNN's commentators held themselves out as legal and political experts.  *See Hammer v. Slater,* 20 F.3d 1137, 1143 (11th Cir. 1994) ("[Plaintiff] points out that the [defendants] were, by their own admission, sophisticated investors.")  In an effort to paint Professor Dershowitz as a lunatic, Begala bragged about his own legal training:  "I did go to the University of Texas School of Law, where I studied criminal law and constitutional law, but never dreamed a legendary legal mind would set them both ablaze on the Senate floor."  In introducing Milgram, Anderson Cooper described her as "our legal expert . . . the former federal prosecutor, former Attorney General of New Jersey and currently a professor at NYU Law School

---

[55] DE 290 at 9.

and CNN legal analyst."[56]  Is this the kind of person CNN's viewers would expect to be unable "to string together a series of common legal principles"?  And Lockhart holds himself out as an expert on politics, having served for decades in various capacities in the White House and numerous political campaigns.  By publishing Dershowitz's bowdlerized quote and adding their bombastic comments, these legal and political experts were leveraging their authoritative stature to convince CNN's world-wide audience that Dershowitz was, in the words of John Berman, "bonkers."[57]

Malice, as defined by the Supreme Court in *Sullivan*, is a highly dynamic concept.  Whether a news organization has "obvious reasons to doubt the veracity" of a story, *St. Amant*, 390 U.S. at 732, depends on what its staff knows, the resources at its disposal, and the expertise of its reporters and commentators.  As the Second Circuit memorably noted in *Goldwater v. Ginzburg*, "[r]ecklessness is . . . only negligence raised to a higher power," 414 F.2d 343, and that is a quintessential jury matter of degree.  Foolishness, apathy, and believing that en banc

---

[56] DE 66 ¶ 13 (Anne Milgram).

[57] *Id.* (John Berman (Jan. 29, 2020)).

34

is where the French deposit their money may be mere negligence for a community newspaper, but recklessness for a multi-billion dollar broadcast organization whose middle name is "News" and for commentators whom it trumpets as legal and political experts. A news organization should not be able to shield itself from all defamation claims by hiring only foolish and lazy chuckleheads who don't understand the most rudimentary aspects of the stories they report on.

As the Supreme Court noted in *Masson,* "[o]n summary judgment, we must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility **and of the weight to be accorded particular evidence**." *Masson*, 501 U.S. at 520 (emphasis added). The highlighted phrase, which goes beyond even what the Court held in *Liberty Lobby*, matters. The district judge accorded conclusive weight to CNN's ostrich-like professions of ignorance, but a jury might well be more skeptical.

Jurors might reasonably find that CNN's witnesses are lying through their teeth when they claim they believed that the truncated clips of Dershowitz's response and its own commentators' histrionic commentaries fairly represented what Dershowitz actually said.

35

Indeed, a jury might find that CNN's commentators knew perfectly well they were distorting Dershowitz's message, confident that few viewers would dig up his full statement and see what he really said.

The Seventh Amendment was adopted precisely to ensure that juries, not the parties themselves, are the ultimate arbiters of past events, including the parties' state of mind. Here, a jury could easily find that someone who attended the prestigious University of Texas Law School or was the Attorney General of New Jersey or was a political operative for decades wasn't being truthful when claiming they believed this was a fair representation of Dershowitz's remarks. Or, it might conclude that a multi-billion-dollar international news organization that claims to have "individually edited and produced" four separate videos that told exactly the same lie was reckless in its journalistic practices and thus undeserving of the protection *Sullivan* accords to responsible journalists.

Beyond that, the district court's ruling gives foolish, lazy, or inept journalists—and journalists who are willing to claim they are foolish, apathetic, and inept when it serves their interests—a get-out-of-jail free card that will protect them from responsibility for malicious defamation

36

if only they leave no discoverable tracks—no emails, chats, or open-mic conversations.  But, as the *Goldwater v. Ginzburg* court observed, this is "certainly a situation not intended by the Supreme Court."  414 F.2d at 343 (citing *St. Amant*, 390 U.S. at 732-33).  *Sullivan*'s author, Justice Brennan, would be appalled to learn that his opinion had been so distorted.  *See Liberty Lobby,* 477 U.S. at 268 ("[B]ecause of my concern that today's decision may erode the constitutionally enshrined role of the jury, and also undermine the usefulness of summary judgment procedure, this is how I believe it should remain." (Brennan, J. dissenting)).

No litigant in common law history has been given such a privilege: not the poisoner who claims he thought the arsenic he put in grandma's tea was sugar; not the drug lord who claims he didn't know what his underlings were doing; not the securities dealer who claims he was using his uncanny market sense rather than trading on inside information; not the police inspector who is "shocked, shocked to find that gambling is going on in here!"  Certainly, such denials can be presented to a jury, but if there is circumstantial evidence that the defendant knew or intended what he later denies after the fact, the

37

Supreme Court has held that he can't avoid a trial in a defamation case by claiming he had only pure thoughts: "The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant*, 390 U.S. at 732.

Here, there is substantial circumstantial evidence that CNN and its commentators did not act in good faith: They were aware of Dershowitz's full testimony on January 27th before the Senate, to which his 5-minute response on January 29th was integrally connected. They all heard and saw it, and CNN had all of Dershowitz's testimony to the Senate on video, so they could play it back if they had any doubt. And, in that testimony, both two days earlier and *on that very day as part of the same statement*, Dershowitz made it perfectly clear that a president who commits a crime *can* be impeached. Yet, CNN and its commentators made statements that preternaturally mimic each other, all attributing to Dershowitz the exact opposite meaning. No "reasonable reader" of Dershowitz' full statement (to use *Masson's* language) could reach the conclusion they claim to have reached. The district judge recognized as much when he called CNN's description of what Professor Dershowitz said foolish, apathetic, and inept. And

foolish, apathetic, and inept in precisely the same way, with precisely the same result. When a mega news organization with highly-paid, highly-credentialed, and high-profile journalists maligns an internationally-esteemed professor's reputation through lockstep foolishness, apathy, and ineptitude, a jury may well conclude that they're either lying or so grossly negligent that they must be deemed reckless.

### 5. This Court Should Join Two Other Circuits That Have Approved Jury Trials on Malice in Highly Analogous Circumstances

The Third Circuit's opinion in *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988) is squarely on point. In *Schiavone*, Time magazine published an article by reporter Sandy Smith that implied a connection between Schiavone and the disappearance of Teamster boss Jimmy Hoffa. The article was based on a leaked memorandum from the personal files of FBI Director William Webster. Schiavone presented evidence that Smith knew the memorandum stated that "none of these [references to Schiavone] suggested any criminality or organized crime associations," but Smith omitted this exculpatory language because he did not believe it. *Id.* at 1074. The district court

39

granted summary judgment for Time. The Third Circuit reversed,

deploying reasoning that is at loggerheads with that of the district court

below:

> **Smith's decision to simply delete language that cast a very different and more benign light on the facts he reported, could itself serve as a basis for a jury's finding by clear and convincing evidence that Time acted with knowledge of probable falsity.** Even assuming that a jury were to find that Time lacked actual malice in reporting that the name of Schiavone appeared in the HOFFEX files, the jury could nevertheless find by clear and convincing evidence that Time acted with actual malice based on its deletion of the exculpatory clause and its insinuation that the appearance of Schiavone and SCC in the HOFFEX files would have "intrigued" the Senate Committee and Special Prosecutor. **The jury could find that Time's alteration implicitly recognized that the story would not "intrigue" its readers without this significant falsification. It could believe that Time recognized the damning implications, and emphasized them by omitting the exculpatory clause and adding editorial comment to draw attention.** In other words, the jury could find clear and convincing evidence that Time's omission of the exculpatory clause significantly altered the message of the memorandum, that Time knew its implication was false, and that Time intended that false implication.

*Id.* at 1092.

The Third Circuit's reasoning speaks directly to Dershowitz's case.

CNN, like Time, omitted key portions of what Dershowitz said to make it

40

sound like he said the precise opposite. CNN, like Time, recognized that the deletion is precisely what would "intrigue" its audience. We know this because that's the very point its anchors and commentators drove home in their histrionic comments. And, CNN, like Time, added "editorial comment to draw attention" to the false message conveyed by the truncated (video) quotes. As in *Schiavone*, "the jury could find clear and convincing evidence that [CNN]'s omission of [key portions of Dershowitz's statement] significantly altered [his] message . . . , that [CNN] knew its implication was false, and that [CNN] intended that false implication." *Id.*

Dershowitz's case is stronger than Schiavone's because of the synchronicity of the allegedly "individually edited and produced" video clips and comments made by CNN's various talking heads, all designed to promote a false narrative, and because of Zucker's cri de guerre, instructing his commentators and anchors to disparage Dershowitz and misinterpret his testimony.

The Second Circuit reached a similar conclusion in *Goldwater v. Ginzburg*, 414 F.2d 324, 337, 340 (2d Cir. 1969), where it held that "highly selective" quotations from articles about the plaintiff that

41

included only derogatory statements but omitted complimentary statements, "even though they qualified the damaging statements," could support a jury finding of actual malice.

There is no reason for this Court to create an inter-circuit conflict by breaking ranks with the Third and Second Circuits' well-reasoned *Schiavone* and *Goldwater* opinions. Indeed, this Circuit's caselaw is already in harmony with these opinions. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016) (holding that "reporting perspectives contrary to the publisher's own should be interpreted as helping to rebut . . . the presence of actual malice"). Here, CNN permitted no contrary opinions or facts to dilute its mantra that, in the district court's words, Dershowitz was "a constitutional scholar and intellectual who had lost his mind."[58]

### 7. The District Court's Reasons for Granting Summary Judgment Are Demonstrably Erroneous

The district court gave two groundless reasons for discounting Dershowitz's evidence about CNN's failure to include in its clips or at

---

[58] DE 290 at 10.

least acknowledge his testimony of January 27th that committing a criminal or criminal-type act *is* grounds for impeachment.

*First*, the district court said that "when Dershowitz spoke on January 29, 2020, he did not qualify his statements with what he said two days earlier."[59] The record refutes that conclusion. In the limited time allotted by the Chief Justice, Dershowitz made no fewer than three references to his earlier comments: (i) "I offered you a hypothetical the other day," (ii) "Now, we talked about motive," and (iii) "I quoted President Lincoln . . . ."[60] No one who reads Dershowitz's concise January 29th statement can fail to grasp that it continues and builds on the more thorough remarks he made on the Senate floor on January 27th. The very purpose of the "Q & A" session on January 29th was to permit Senators to ask questions about what they had heard during the impeachment trial, including Dershowitz's statements on January 27th. Nevertheless, CNN and its commentators intentionally omitted any mention of Dershowitz's statement on January 27th, including the caveat that "illegal" conduct was impeachable, no doubt because

---

[59] DE 290 at 10.

[60] DE 17-1 at S650

43

including it would have demonstrated that they were, in the district court's words, "foolish[], apath[etic], and [unable] to string together a series of common legal principles"—or just bald-faced liars.

Moreover, CNN need not have looked back even 48 hours to understand Dershowitz's true meaning of what constitutes impeachable conduct:  He thrice reiterated his view on the same day, first when he prefaced his statement with "**The only thing that would make a quid pro quo unlawful is if the quo were in some way illegal**."[61] Then, he noted that "it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and **does not involve personal pecuniary interest**."[62] Finally, Dershowitz gave an example of an "easy" case for impeachment, namely, a quid pro quo based on conduct akin to bribery.[63]  And he did this all within the same 5-minute statement—the very statement CNN and its expert commentators savaged in their commentary.

_____

[61] *Id.* (emphasis added).

[62] *Id.* (emphasis added).

[63] *Id.*

44

In granting summary judgment for CNN, the district court stated: "Dershowitz specifically focused only on the president's own political interest scenario," quoted a small portion of his floor statement and concluded "[t]he text of Dershowitz' January 29 statement does not support a finding that CNN acted with actual malice."[64]  But, as quoted in the paragraph above, that is not all that Dershowitz said that day; he made it quite clear that in a mixed-motive case—a case involving both political *and* personal interests—a president is immune from impeachment only if the quid pro quo "**does not involve personal pecuniary interest**,"[65] illegality, or corruption.  It certainly would not include extortion, bribery, or murder, as the commentators claimed.

Ironically, the district court recognized the force of this argument when it previously denied CNN's motion to dismiss based on the fair reporting privilege:

> Dershowitz contends that by omitting the phrase, 'the only thing that would make a quid pro quo unlawful is if the quo were somehow illegal,' CNN presented Dershowitz' comments in a misleading context, which enabled the commentators to (falsely) assert that

---

[64] DE 290 at 14.

[65] *Id.* (emphasis added).

Dershowitz believed a president could extract a quid pro quo for any reason, including an illegal reason, if he believed it would help his re-election. Dershowitz alleges that if the entire clip had been played, no panel guest would have been able to credibly make that statement. . . . Thus, Dershowitz argues, CNN presented an official proceeding in a misleading manner and the fair report privilege does not apply.

The Court agrees. **CNN presented an abridgment of Dershowitz' answer to Senator Cruz' question. The abridgment is not accurate, to the extent that it omitted a crucial qualification, that an illegal motive for a quid pro quo would be corrupt.** As a result, the commentators' statements—that Dershowitz believes a President can do anything, even commit crimes if it would help his re-election—are not based upon a fair and accurate summary of Dershowitz' statement to the Senate.[66]

Dershowitz relied on this ruling in conducting discovery and responding to CNN's motion for summary judgment. The district court gave no reason for abandoning it, and nothing that occurred during discovery warranted it. In any event, how to construe Dershowitz's January 29th answer to a question about his January 27th statement is a matter for the jury to decide. The district court was not authorized to usurp the jury's Seventh Amendment function.

---

[66] DE 28 at 12-13.

*Second*, the district court said "there is no requirement under the First Amendment for a reporter to talk about everything Dershowitz has *ever* said about impeachment or even all the various ways one can be impeached."[67]   But Dershowitz does not claim that CNN was required to research "everything [he] has ever said about impeachment."   Dershowitz only claims that, to enjoy First Amendment protection, CNN was required to use the knowledge it had of his testimony less than 48 hours before, which he thrice referenced on January 29th, or, at the very least, mention his clear statement on the very same day within the same 5-minute response, that conditioning an official act on receiving a "personal pecuniary interest" would be an "easy case" for impeachment.[68]   A jury could find that CNN's omission of this information—which its commentators admitted they saw and heard—was part of a deliberate effort to smear Dershowitz's reputation, and so clearly and convincingly shows actual malice.

---

[67] DE 290 at 10-11 (emphasis added).

[68] DE 17-1 at S651.

### 8. Dershowitz Presented Affirmative Evidence of Malice

Dershowitz also presented affirmative evidence that CNN's commentators had obvious reasons to doubt the veracity of their statements. Dershowitz showed that Paul Begala knew that Dershowitz had stated on January 27th that a president was subject to impeachment for "criminal-type acts akin to treason, bribery," yet Begala wrote on CNN.com that "[t]he Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their re-election effort. . . . Bribery statutes: gone. Extortion: no more."[69] A jury might interpret that as clear and convincing evidence of actual malice.

A jury might construe other statements by Begala as showing that his falsification of Dershowitz's impeachment views recklessly disregarded the truth and was therefore malicious. Asked at deposition about his statement that "the Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their reelection effort," Begala

---

[69] DE 66 at ¶ 13.

admitted that Dershowitz "didn't say anything like that."[70]  Begala also

admitted that Dershowitz said a president could be impeached if he

accepted a bribe for his own pecuniary interest.[71]  A jury might view

these admissions as clear and convincing proof that Begala's

defamatory statements about Dershowitz were made willfully or in

reckless disregard of the truth.  At a minimum, Begala's failure to

retract statements he acknowledges were false after Dershowitz asked

CNN for a retraction provides a basis for inferring malice.  *Celle v.*

*Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 187 (2d Cir. 2000) ("'Under

certain circumstances evidence [of a refusal by a publisher to retract a

statement after it has been demonstrated to him to be both false and

defamatory] . . . might be relevant in showing recklessness at the time

the statement was published.'" (quoting Restatement (Second) of Torts,

§ 580A cmt. d, at 219 (1977))); *Castellani v. Scranton Times, L.P.*, 124

A.3d 1229, 1238 (Pa. 2015) ("'Republications, retractions and refusals to

retract are similar in that they are subsequent acts used to demonstrate

a previous state of mind.'" (quoting *Weaver v. Lancaster Newspapers,*

---

[70] DE 260-2 at 32 ¶ 38.

[71] *Id*. ¶ 39.

49

*Inc.*, 926 A.2d 899, 906 (Pa. 2007))); *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 543 (2010) ("[R]efus[al] to make a retraction after admitting he knew that the contents of the . . . report were false" supported finding of actual malice by clear and convincing evidence).

The district court acknowledged Begala's deposition statements but accepted Begala's explanation that "the argument [Dershowitz] [laid] out will be abused to justify all manner of things by politicians seeking their reelection.  I don't say Dershowitz says this.  I say this is a doctrine that would do this.  I think it's an important distinction."[72]  But it's not the district court's prerogative to decide whether Begala's explanation is plausible.  A jury might well take Begala's admission literally and reject his after-the-fact lawyerly explanation.  As the Supreme Court held in *Liberty Lobby*, it all comes down to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  477 U.S. at 242.  "We repeat . . . that the plaintiff to survive the defendant's motion [for summary judgment], need only present evidence from which a jury **might** return a verdict in his favor.

---

[72] DE 290 at 17 (second insertion by the district court).

If he does so, there is a genuine issue of fact that requires a trial." *Id.* at 257 (emphasis added).  Begala's admission that he knew what Dershowitz actually said but chose to omit it from his statement or the video clip he used to support it makes this a case where the question of malice must be submitted to the jury under *Masson*, *Schiavone* and *Goldwater*.

Anne Milgram, too, admitted repeatedly that she "had read or watched every part of the impeachment trial up until the point that [she] went on, [and] was familiar with everything that had transpired."[73] Thus, Milgram, like Begala, was not required to rummage through Dershowitz's life work to understand his view of impeachment; she had been a careful observer of the proceedings, as befits someone who is held out by Anderson Cooper as CNN's "legal expert."  Yet, despite her impeccable credentials (also recited by Cooper in introducing her), she ignored all the unambiguous qualifiers Dershowitz explicated during his testimony and joined the "foolishness, apathy, and an inability to string together a series of common legal principles" of her fellow commentators.  A jury might well construe this as recklessness or willful

---

[73] DE 196-1 at 5-6 (Tr. pp. 17-18).

blindness on her part, which would easily support a finding of actual malice as that term is defined by *Sullivan.* "The finder of fact must determine whether the publication was indeed made in good faith." *St. Amant*, 390 U.S. at 732.

## II.  IF THIS COURT CONCLUDES THAT THE EVIDENCE OF CNN'S CONDUCT DOES NOT SUPPORT A FINDING OF ACTUAL MALICE, *NEW YORK TIMES V. SULLIVAN* SHOULD BE RECONSIDERED

As the District Court below noted, *New York Times v. Sullivan* has been the subject of substantial criticism, *e.g.*, *Tah v. Global Witness Publishing, Inc.,* 991 F.3d 231, 251 (D.C. Cir. 2021) (Silberman, J. dissenting), including from sitting Supreme Court Justices.  *See Berisha v. Lawson*, 141 S. Ct. 2424 (2021) (dissenting opinions of Thomas, J., and Gorsuch, J.); Elena Kagan, *A Libel Story:* Sullivan *Then and Now*, 18 L. & Soc. Inquiry 197 (1993) (questioning the adoption of the actual malice standard); DE 290 at 11 ("*Sullivan* . . . is a great example of how bad facts can contribute to the making of unnecessary law . . . .").  Just two weeks ago, Justice Thomas reiterated his objections to *Sullivan* and included a long list of Supreme Court justices, past and present, who "have questioned the soundness of *New York Times* and its numerous extensions." *Counterman v. Colorado*, No. 22-138, 2023 WL 4187751, at

52

*19 (U.S. June 27, 2023) (listing Chief Justices Burger and Rehnquist and Justices Gorsuch, Harlan, Kagan, Marshall, Scalia, Stewart, and White).

While plaintiff believes he has amply met his burden to merit a trial under the prevailing case law, if this Court were to disagree, Dershowitz respectfully suggests that the *Sullivan* line of cases should be reconsidered, reframed and perhaps overruled. He recognizes that this Court cannot overrule *Sullivan* and its Supreme Court progeny. He makes this argument to preserve the issue if the case should reach the Supreme Court. He specifically challenges the requirement that he show "clear and convincing evidence" of malice at the summary judgment stage, as required by *Anderson v. Liberty Lobby*, 477 U.S. 242, 244 (1986). No other area of law requires evidence of a defendant's subjective state of mind, proven to such a high degree of certainty to a judge rather than a jury—as *Sullivan*'s author sagely observed. *Id*. at 260-64 & n.3 (Brennan, J., dissenting).

The district court held that "the evidence before the Court—while establishing foolishness, apathy, and an inability to string together a series of common legal principles—does not establish actual malice

53

under the *Sullivan* standard."[74]  If that is what *Sullivan* has come to

mean six decades after it was decided, then it is ripe for reconsideration.

"Americans' confidence in newspapers and television news has fallen to

the lowest levels ever recorded, according to a Gallup poll . . . ."[75]  A good

part of the reason for this deplorable state of affairs may well be that

news organizations like CNN have abused the privilege *Sullivan*

accorded them by engaging journalists whose stock-in-trade is

"foolishness, apathy, and an inability to string together" a series of

principles common to whatever subject they are reporting on.  Walter

Cronkite and Edward R. Murrow they are not.  The public no longer

trusts the press because the press habitually engages in irresponsible,

often malignant, behavior and then hides behind *Sullivan* and battalions

of expensive lawyers to avoid responsibility for the damage they cause.

If the standards of journalism in America have devolved to where

lavishly compensated, highly-credentialed journalists supported by

hundreds of producers, writers and technical staff can shrug off liability

---

[74] DE 290 at 9.

[75] Carlie Porterfield, *Americans' Confidence In Media Falls To Record Lows, Poll Finds*, Forbes (July 18, 2022), *available at* https://tinyurl.com/2srp3bxx.

for defamatory statements by claiming to be too stupid, too forgetful, too apathetic or too inept to accurately report a 5-minute statement on the Senate floor in a presidential impeachment trial, what chance is there that they will report accurately on the thousands of other stories, large and small, that they cover every year? Our democracy can't long endure such erosion in journalistic professionalism. We must reconsider it before it destroys the Republic.

## <u>Conclusion</u>

The Court should reverse the judgment of the district court and remand for a jury trial on the merits.

Dated: July 11, 2023                    Respectfully submitted,


By: <u>/s/ Mark A. Schweikert</u>
Mark A. Schweikert
SCHWEIKERT LAW PLLC
1111 Brickell Avenue, Ste. 1550
Miami, Florida 33131
Tel: (305) 999-1906
mark@schweikertlaw.com

John B. Williams
WILLIAMS LOPATTO PLLC
1629 K Street, N.W., Ste. 300
Washington, DC 20006
Tel: (202) 296-1665
jbwilliams@williamslopatto.com

Neil H. Koslowe
POTOMAC LAW GROUP, PLLC
1717 Penn. Ave., N.W., Ste. 1025
Washington, DC 20006
Tel: (202) 320-8907
nkoslowe@potomaclaw.com

Counsel for Appellant
**ALAN M. DERSHOWITZ**

## <u>Certificate of Compliance with Rule 32(a)</u>

1.     This brief complies with the type-volume limitation of FED.

R. APP. P. 32(a)(7)(B) because this brief contains 9849 words, excluding

the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of FED.

R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P.

32(a)(6) because this brief has been prepared in a proportionally spaced

typeface using Microsoft Office Word for Windows in Century

Schoolbook 14-point font.


Dated:  July 11, 2023                    By: /s/ Mark A. Schweikert
                                         Mark A. Schweikert
                                         SCHWEIKERT LAW PLLC
                                         1111 Brickell Avenue, Ste. 1550
                                         Miami, Florida 33131
                                         Tel: (305) 999-1906
                                         mark@schweikertlaw.com

## Certificate of Service

This certifies that the foregoing brief has been filed electronically with the Clerk for the United States Court of Appeals for the Eleventh Circuit, which will automatically send a copy of same to all counsel of record by e-mail.

Dated:  July 11, 2023                    By: /s/ Mark A. Schweikert
                                         Mark A. Schweikert
                                         SCHWEIKERT LAW PLLC
                                         1111 Brickell Avenue, Ste. 1550
                                         Miami, Florida 33131
                                         Tel: (305) 999-1906
                                         mark@schweikertlaw.com

58