**23-11270**

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

◆◆

ALAN M. DERSHOWITZ,

*Plaintiff-Appellant,*

—v.—

CABLE NEWS NETWORK, INC.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

## BRIEF FOR DEFENDANT-APPELLEE

KATHERINE M. BOLGER
RAPHAEL HOLOSZYC-PIMENTEL
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas,
   21st Floor
New York, New York 10020
(212) 489-8230

GEORGE S. LEMIEUX
ERIC C. EDISON
GUNSTER, YOAKLEY & STEWART, P.A.
450 East Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
(954) 462-2000

*Attorneys for Defendant-Appellee*

*Dershowitz v. Cable News Network, Inc.*, Case No. 23-11270

## DEFENDANT-APPELLEE'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendant-Appellee Cable News Network, Inc. ("CNN") hereby certifies that CNN is ultimately a wholly owned subsidiary of Warner Bros. Discovery, Inc., a publicly traded corporation. Warner Bros. Discovery, Inc. has no parent company and, to the best of CNN's knowledge, no publicly held company owns ten percent or more of Warner Bros. Discovery, Inc.'s stock. CNN further verifies that the persons listed below have or may have an interest in the outcome of this case:

1.     Adler Wellikoff, PLLC

2.     Alan Dershowitz Legal Defense Trust

3.     Bolger, Katherine M.

4.     Cable News Network, Inc.

5.     Davis Wright Tremaine LLP

6.     Dershowitz, Alan

7.     Edison, Eric C.

8.     Everdell, Abigail B.

9.     Feder, Eric J.

10.    Gunster, Yoakley & Stewart, P.A.

11.    Holoszyc-Pimentel, Raphael

*Dershowitz v. Cable News Network, Inc.*, Case No. 23-11270

12.     Hunt, Patrick M., Magistrate Judge

13.     Kaplan, Sydney J.

14.     Koslowe, Neil H.

15.     Kozinski, Alex

16.     LeMieux, George S.

17.     Levine, Amanda B.

18.     Lowenstein Sandler LLP

19.     Maimin, Rachel

20.     Oran, Hilary

21.     Potomac Law Group, PLLC

22.     Schweikert Law PLLC

23.     Schweikert, Mark A.

24.     Singhal, Raag, District Judge

25.     Warner Bros. Discovery, Inc. (Nasdaq: WBD)

26.     Wellikoff, Scott M.

27.     Williams Lopatto PLLC

28.     Williams, John B.

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Cable News Network, Inc. requests oral argument, as this case raises important issues under the First Amendment.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

STATEMENT OF THE ISSUES FOR REVIEW ....................................................1

COUNTER-STATEMENT OF THE CASE .........................................................1

    I.    Counter-Statement of Facts .................................................5

        A.    The Parties.................................................................5

        B.    Before CNN's Reporting, Dershowitz Admits His Entire
            Reputation Was "Destroyed" by Unrelated Allegations ............5

        C.    Dershowitz Claims He Was Shunned for Defending
            Trump .......................................................................6

        D.    Dershowitz's Arguments at the Impeachment Trial..................6

        E.    Dershowitz Admits He "Slipped Up" in the Response .............9

        F.    Dershowitz's Response Is Condemned Before CNN's
            Statements .................................................................9

        G.    CNN's Statements at Issue.......................................11

            1.    Anderson Cooper Full Circle – 6:33 p.m. ......................11

            2.    Lockhart on Erin Burnett OutFront – 7:11 p.m.............13

            3.    Begala's Opinion Column – 8:56 p.m. ..........................14

            4.    Berman on New Day – January 30, 6:17 a.m.................16

        H.    Numerous Legal Experts Interpreted the Response the
            Same Way CNN Did...............................................17

        I.    Dershowitz Appears on CNN .................................17

    II.    Procedural History.........................................................18

STANDARD OF REVIEW ..................................................................19

SUMMARY OF THE ARGUMENT ....................................................19

ARGUMENT ....................................................................................20

    I.     The District Court Correctly Held that Dershowitz Could Not
            Prove Actual Malice ..............................................................21

    II.    Dershowitz Misstates the Law ...............................................25

    III.   Dershowitz Misstates the Facts .............................................33

    IV.   The Speakers Provided Rational Interpretations of an
            Ambiguous Argument ...........................................................41

    V.    CNN's Statements Are Constitutionally Protected Opinion...............44

    VI.   Dershowitz Cannot Prove that CNN Caused His Claimed
            Damages ................................................................................51

CONCLUSION .................................................................................52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*,
555 F.3d 1331 (11th Cir. 2009) ........................................................... 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ......................................................... 21, 25, 26

*Anheuser-Busch, Inc. v. Philpot*,
317 F.3d 1264 (11th Cir. 2003) ........................................................... 51

*Berisha v. Lawson*,
973 F.3d 1304 (11th Cir. 2020) ......................................................... 22

*Biospherics, Inc. v. Forbes, Inc.*,
151 F.3d 180 (4th Cir. 1998) ............................................................. 45

*Blankenship v. NBCUniversal, LLC*,
60 F.4th 744 (4th Cir. 2023) ............................................................. 30

*Bose Corp. v. Consumers Union of U.S., Inc.*,
466 U.S. 485 (1984) ........................................................................ 41

*Byrd v. Hustler Mag., Inc.*,
433 So. 2d 593 (Fla. 4th DCA 1983) .................................................. 44

*CACI Premier Tech., Inc. v. Rhodes*,
536 F.3d 280 (4th Cir. 2008) ............................................................. 41

*Colodny v. Iverson, Yoakum, Papiano & Hatch*,
936 F. Supp. 917 (M.D. Fla. 1996) ................................................... 49

*Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*,
6 F.4th 1247 (11th Cir. 2021) ............................................... 21, 30, 32

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005) ......................................................... 37

*Counterman v. Colorado*,
143 S. Ct. 2106 (2023) ........................................................................4, 28, 32, 33

*Daly v. Morris Publ'g Grp., LLC*,
2009 WL 5876239 (Fla. 4th Cir. Ct. Mar. 17, 2009) ........................................46

*Dongguk Univ. v. Yale Univ.*,
734 F.3d 113 (2d Cir. 2013) ................................................................................30

*Edward Lewis Tobinick, MD v. Novella*,
848 F.3d 935 (11th Cir. 2017) ..............................................................19, 27, 30

*Egwuatu v. Burlington Coat Factory Warehouse Corp.*,
2011 WL 2413833 (M.D. Fla. June 10, 2011) ...................................................51

*Fortson v. Colangelo*,
434 F. Supp. 2d 1369 (S.D. Fla. 2006) .........................................................45, 49

*Freedom Newspapers of Tex. v. Cantu*,
168 S.W.3d 847 (Tex. 2005) ...............................................................................24

*From v. Tallahassee Democrat, Inc.*,
400 So. 2d 52 (Fla. 1st DCA 1981) ...............................................................48, 49

*Fudge v. Penthouse Int'l, Ltd.*,
840 F.2d 1012 (1st Cir. 1988).............................................................................45

*Garvie v. City of Ft. Walton Beach*,
366 F.3d 1186 (11th Cir. 2004) ..........................................................................25

*Goldwater v. Ginzburg*,
414 F.2d 324 (2d Cir. 1969) ....................................................................30, 31, 32

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989).............................................................................................27

*Hay v. Independent Newspapers, Inc.*,
450 So. 2d 293 (Fla. 2d DCA 1984).....................................................................48

*Horsley v. Rivera*,
292 F.3d 695 (11th Cir. 2002) ............................................................................45

*Hunt v. Liberty Lobby*,
　　720 F.2d 631 (11th Cir. 1983) ............................................22

*Janklow v. Newsweek, Inc.*,
　　788 F.2d 1300 (8th Cir. 1986) ............................................47

*Jankovic v. Int'l Crisis Grp.*,
　　822 F.3d 576 (D.C. Cir. 2016) ............................................35

*Jefferson v. Sewon Am., Inc.*,
　　891 F.3d 911 (11th Cir. 2018) ............................................25

*Kernel Recs. Oy v. Mosley*,
　　694 F.3d 1294 (11th Cir. 2012) ..........................................19

*Klayman v. City Pages*,
　　650 F. App'x 744 (11th Cir. 2016) ......................................22

*Larreal v. Telemundo of Fla., LLC*,
　　489 F. Supp. 3d 1309 (S.D. Fla. 2000) ................................47

*Levan v. Capital Cities/ABC, Inc.*,
　　190 F.3d 1230 (11th Cir. 1999) ..........................................22

*Liberty Lobby, Inc. v. Anderson*,
　　1991 WL 186998 (D.D.C. May 1, 1991) ..............................41

*Lujan v. Nat'l Wildlife Fed'n*,
　　497 U.S. 871 (1990) ............................................................26

*Masson v. New Yorker Mag., Inc.*,
　　501 U.S. 496 (1991) ............................................................29

*Meisler v. Gannett Co.*,
　　12 F.3d 1026 (11th Cir. 1994) ........................................22, 27

*Miami Herald Publ'g Co. v. Tornillo*,
　　418 U.S. 241 (1974) ............................................................23

*Michel v. NYP Holdings, Inc.*,
　　816 F.3d 686 (11th Cir. 2016) ..................................22, 24, 25

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990) ............................................................................44, 46

*Mills v. Alabama*,
    384 U.S. 214 (1966) ...............................................................................50

*Moldea v. N.Y. Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994) ..........................................................42, 50

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...............................................................21, 32, 33, 52

*Partington v. Bugliosi*,
    56 F.3d 1147 (9th Cir. 1995) ..............................................................50

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) ..............................................................29

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ...........................................................45

*Rasmussen v. Collier Cnty. Publ'g Co.*,
    946 So. 2d 567 (Fla. 2d DCA 2006) ...................................................48

*Safex Found., Inc. v. Safeth, Ltd.*,
    531 F. Supp. 3d 285 (D.D.C. 2021) ...................................................50

*Sandmann v. N.Y. Times Co.*,
    2023 WL 5274469 (6th Cir. Aug. 16, 2023) .....................................45

*Schiavone Constr. Co. v. Time, Inc.*,
    847 F.2d 1069 (3d Cir. 1988) ......................................................30, 31

*Silvester v. Am. Broad. Cos.*,
    839 F.2d 1491 (11th Cir. 1988) ..........................................................22

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .........................................................................27, 28

*Thomas v. L.A. Times Commc'ns, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002) ............................................50

*Tillett v. BJ's Wholesale Club, Inc.*,
   2010 WL 11507322 (M.D. Fla. July 30, 2010) ..................................................48

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971)...................................................................29, 41, 42

*Trump v. Cable News Network, Inc.*,
   2023 WL 4845589 (S.D. Fla. July 28, 2023) ......................................................46

*Tucker v. Fischbein*,
   237 F.3d 275 (3d Cir. 2001) ..............................................................30

*Turner v. Wells*,
   198 F. Supp. 3d 1355 (S.D. Fla. 2016),
   *aff'd*, 879 F.3d 1254 (11th Cir. 2018).....................................................46

*Turner v. Wells*,
   879 F.3d 1254 (11th Cir. 2018) ...............................................................*passim*

*United States v. Gonzalez-Zea*,
   995 F.3d 1297 (11th Cir. 2021) .........................................................40

*Woodard v. Sunbeam Television Corp.*,
   616 So. 2d 501 (Fla. 3d DCA 1993)...................................................18

*Zambrando v. Devanesan*,
   484 So. 2d 603 (Fla. 4th DCA 1986).....................................................48

*Zimmerman v. Allen*,
   2014 WL 3731999 (Fla. 18th Cir. Cit. June 30, 2014).......................................42

## Other Authorities

11th Cir.R.28-5 ....................................................................................5

*Alan Dershowitz at the National Constitution Center*, YOUTUBE (Mar. 27, 2014),
   https://www.youtube.com/watch?v=rj6JPDHEUIA&t=2016s ...........................5

ALAN DERSHOWITZ, TAKING THE STAND: MY LIFE IN THE LAW (2019) .................51

ALAN M. DERSHOWITZ, SHOUTING FIRE: CIVIL LIBERTIES IN A TURBULENT AGE
   (2002) ....................................................................................................4

ALAN M. DERSHOWITZ, TAKING LIBERTIES: A DECADE OF HARD CASES, BAD LAWS, AND BUM RAPS (1988) ........................................................................52

The Late Show with Stephen Colbert, YOUTUBE (Jan. 29, 2020), https://www.youtube.com/watch?v=cXXPRImhn_E&t=374s ..........................44

## STATEMENT OF THE ISSUES FOR REVIEW

1. Whether the District Court properly granted summary judgment to a media defendant sued for libel by a public figure, when the plaintiff adduced no evidence that any of the individuals responsible for the allegedly defamatory statements had any doubts as to the truth of the statements, and the undisputed evidence in the record uniformly showed that they believed and still believe the statements.

2. Whether, in the alternative, summary judgment for a media defendant in a libel case may be affirmed where the statements at issue comprised opinions about arguments the plaintiff made on the floor of the U.S. Senate during a presidential impeachment trial that was televised live by the defendant, and where each statement was accompanied by an unedited clip of the relevant portion of the plaintiff's argument.

## COUNTER-STATEMENT OF THE CASE

This lawsuit concerns CNN's airing of video clips and associated commentary on a matter of profound public concern: Plaintiff-Appellant Alan Dershowitz's advocacy on behalf of former President Donald Trump on the floor of the U.S. Senate during the presidential impeachment proceedings of 2020. CNN aired verbatim clips showing Dershowitz making his arguments to the Senators, and CNN commentators made four statements of constitutionally protected opinion criticizing

1

the arguments he made. And the speakers were not the only people to hold those opinions – countless media outlets and others interpreted Dershowitz's arguments the same way. The speech at issue here is the stuff of political debate, not libel litigation.

At the pleading stage, the District Court accepted Dershowitz's theory that CNN deliberately mischaracterized his arguments and denied CNN's motion to dismiss because Dershowitz promised he could prove a grand conspiracy among CNN bad actors. Yet, after taking extensive discovery, Dershowitz was unable to find a shred of evidence – much less the clear and convincing evidence Dershowitz is required to adduce – that any CNN representative acted with a subjective awareness that CNN's reporting or any of the commentators' statements were false. In fact, all the evidence showed that the CNN representatives believed the reporting and commentary were accurate and fair, and do so to this day.

Faced with an undisputed record showing that no one at CNN acted with actual malice, the District Court granted summary judgment against Dershowitz. That decision was correct. The evidence showed that CNN absolutely believed in the truth of its reporting. Each of the four separate decisionmakers who prepared the clips at issue independently determined which portions of Dershowitz's argument to highlight based on their editorial judgment, and believed the clip they prepared was fair and accurate. And each and every speaker testified they believed what they were

saying was fair and accurate at the time they said it. There is no evidence in the record to contradict such beliefs. There is no basis for this Court to overturn the summary-judgment decision.

In an effort to get around this inescapable conclusion, Dershowitz does what he did below: he mischaracterizes the caselaw, misstates the evidence, and calls for the overturning of the Supreme Court's decision in *New York Times Co. v. Sullivan*, which put in place the "actual malice" standard Dershowitz is required to meet. On the law, he falsely tries to cast the actual-malice standard – which requires subjective awareness of falsity – into an objective negligence-like standard, which could be satisfied by claiming a journalist was sloppy or "foolish." And he repeatedly insists that granting summary judgment violates the Seventh Amendment when a jury could potentially disbelieve the unrebutted testimony of CNN's witnesses. But both the Supreme Court and this Court have squarely rejected these arguments.

On the facts, Dershowitz tries to explain what he *meant to* say on the Senate floor, notably failing to quote what he actually said. But regardless of what he *meant*, CNN's commentary reflects what he *said*. He also falls back on the conspiracy theory that animated his Complaint: that the CNN publications were part of a "coordinated effort," "spearheaded" by CNN's former president to "demolish" Dershowitz's "hard-earned reputation." Appellant's Brief ("Br.") at 17, 29. But as

3

the District Court correctly held, Dershowitz was required to find *evidence* to support his theories. There is no such evidence here.

Finally, despite his self-image as a free-speech crusader, Dershowitz urges a "revisit[ing]" of the *Sullivan* decision. Br. at 19. But what Dershowitz neglects to mention is that, just before he filed his brief in this appeal, the Supreme Court forcefully reaffirmed the *Sullivan* standard. *See Counterman v. Colorado*, 143 S. Ct. 2106, 2115-16 (2023). The *Sullivan/Counterman* standard remains the law of the land. As it should be. For almost 60 years, that standard has protected the press from abusive actions, like this one, designed to punish speech about public figures. Dershowitz, who boasted in this very litigation that he clerked on the Supreme Court when *Sullivan* was decided, has previously applauded *Sullivan* because it protects the media's "constitutional right to broadcast and publish what they had believed to be true" and "the need to err on the side of wrongly criticizing government and other powerful institutions rather than wrongly withholding such criticism." ALAN M. DERSHOWITZ, SHOUTING FIRE: CIVIL LIBERTIES IN A TURBULENT AGE 150 (2002).

In fact, in praising the decision at an event celebrating *Sullivan*'s 50th anniversary, Dershowitz argued that harsh commentary about public figures should be protected because "it's a cost worth paying, and if you don't like the heat stay out

of the kitchen."[1] Dershowitz was right. Political debate about our democracy is worth protecting. This Court should affirm summary judgment.

## I.      Counter-Statement of Facts

### A.      The Parties

CNN owns and operates news platforms and services, including the television network known as CNN and the website www.cnn.com. D.E.235-1 ¶2.[2]

Dershowitz is an emeritus professor at Harvard Law School. *Id.* ¶1. ¶

### B.      Before CNN's Reporting, Dershowitz Admits His Entire Reputation Was "Destroyed" by Unrelated Allegations

In 2014, Virginia Giuffre, a victim of Jeffrey Epstein, publicly alleged Dershowitz sexually assaulted her. *Id.* ¶6. In January 2022, Dershowitz testified that Giuffre's allegations destroyed his "entire reputation" and "entire legacy"; they "destroyed [his] life," "happiness," "health," and "career as a public speaker," and "affected [his] writing," "sales of books," and "the readership of [his] books. [He] do[es]n't think any part of [his] life was not affected …." D.E.287-12 at 89 (349:11-15); D.E.287-13 at 10 (468:1-5); D.E.287-14 at 29 (622:2-24); *see also* D.E.235-1 ¶11.

---

[1] *Alan Dershowitz at the National Constitution Center*, YOUTUBE (Mar. 27, 2014), https://www.youtube.com/watch?v=rj6JPDHEUIA&t=2016s.

[2] Pursuant to 11th Cir.R.28-5, citations to the record are to the District Court's docket-entry number (denoted by "D.E.__") and to the page number generated in the District Court's ECF header.

### C.    Dershowitz Claims He Was Shunned for Defending Trump

Before any of the CNN reporting at issue, Dershowitz claimed his reputation had been damaged when he became an advocate for President Trump's "civil-liberties." D.E.235-1 ¶12. Dershowitz was also criticized by academics and the media for his shifting opinions on impeachment. *See id.* ¶13. In 1998, Dershowitz stated impeachment does not require a crime. *Id.* ¶14. In 2018, he changed his mind, arguing a statutory crime *was* necessary for impeachment. *Id.* ¶15. But then, in 2020, Dershowitz pivoted again, arguing that only a crime or "crime-like" behavior would satisfy his standard. *Id.* ¶16. Dershowitz's vacillating positions were so widely panned they prompted commentators to publicly wonder "What Happened to Alan Dershowitz?" D.E.271-94; D.E.271-104.

### D.    Dershowitz's Arguments at the Impeachment Trial

The impeachment trial of President Trump for withholding congressionally authorized funds from Ukraine began on January 22, 2020. D.E.235-1 ¶22. CNN aired (and streamed online) the entire trial. *Id.* ¶23. On January 27, 2020, Dershowitz gave his opening statement against conviction on behalf of Trump. *Id.* ¶26. Those comments were widely criticized as dangerously enlarging the power of the presidency. *Id.* ¶¶18, 27.

In a question-and-answer session on January 29, 2020, at approximately 2:10 p.m., Senator Cruz asked: "As a matter of law, does it matter if there was a quid pro

quo? Is it true that quid pro quos are often used in foreign policy?" D.E.271-29 at 7.

Dershowitz responded as follows (the "Response"):

> Yesterday, I had the privilege of attending the rolling-out of a peace plan by the President of the United States regarding the Israel-Palestine conflict, and I offered you a hypothetical the other day: What if a Democratic President were to be elected and Congress were to authorize much money to either Israel or the Palestinians and the Democratic President were to say to Israel "No; I am going to withhold this money unless you stop all settlement growth" or to the Palestinians "I will withhold the money Congress authorized to you unless you stop paying terrorists, and the President said "Quid pro quo. If you don't do it, you don't get the money. If you do it, you get the money"? There is no one in this Chamber who would regard that as in any way unlawful. The only thing that would make a quid pro quo unlawful is if the quo were some way illegal.  [the "Illegal Quo Line"]

> Now, we talked about motive. There are three possible motives that a political figure can have: One, a motive in the public interest, and the Israel argument would be in the public interest; the second is in his own political interest; and the third, which hasn't been mentioned, would be in his own financial interest, his own pure financial interest, just putting money in the bank. I want to focus on the second one for just one moment.

> Every public official whom I know believes that his election is in the public interest. Mostly, you are right. Your election is in the public interest. If a President does something which he believes will help him get elected—in the public interest—that cannot be the kind of quid pro quo that results in impeachment.  [the "Public Interest Argument"]

> I quoted President Lincoln, when President Lincoln told General Sherman to let the troops go to Indiana so that they could vote for the Republican Party. Let's assume the President was running at that point and it was in his electoral interests to have these soldiers put at risk the lives of many, many other soldiers who would be left without their company. Would that be an unlawful quid pro quo? No, because the President, A, believed it was in the national interest, but B, he believed that his own election was essential to victory in the Civil War. Every

President believes that. That is why it is so dangerous to try to psychoanalyze the President, to try to get into the intricacies of the human mind.

Everybody has mixed motives, and for there to be a constitutional impeachment based on mixed motives would permit almost any President to be impeached.

*Id.* Dershowitz later continued:

Now, we may argue that it is not in the national interest for a particular President to get reelected or for a particular Senator or Member of Congress—and maybe we are right; it is not in the national interest for everybody who is running to be elected—but for it to be impeachable, you would have to discern that he or she made a decision solely on the basis of, as the House managers put it, corrupt motives, and it cannot be a corrupt motive if you have a mixed motive that partially involves the national interest, partially involves electoral, and does not involve personal pecuniary interest.

*Id.* at 8 (the "Sole Corrupt Motive Argument"). Dershowitz then gave an example of

a "purely corrupt" motive, which he defined as a personal pecuniary motive. *Id.* He

concluded his answer by stating:

But a complex middle case is: I want to be elected. I think I am a great President. I think I am the greatest President there ever was, and if I am not elected, the national interest will suffer greatly. That cannot be an impeachable offense.

*Id.* (the "Greatest President Argument").[3] Notably, Dershowitz does not quote the

Response in its entirety in his brief. Instead, he paraphrases it and claims he made

points that appear nowhere in the text or video of the Response.

---

[3] The words "an impeachable offense" were omitted from the Congressional Record,

### E.    Dershowitz Admits He "Slipped Up" in the Response

Dershowitz testified that the Response "was given spontaneously. It is not written out. Obviously, every single word of it can't be parsed together." D.E.287-9 at 403:6-11. He conceded he might have "slipped up" when, in the Illegal Quo Line, he referred only to a "quo" being "in some way illegal," claiming, "I thought I said quid or quo. That's what I meant." *Id.* at 398:3-10. He also admitted his reference to Lincoln sending troops to Indiana "wasn't a quid pro quo, but … was related to quid pro quo" (*id.* at 393:2-394:23), even though, in the Response itself, he said it was one.

### F.    Dershowitz's Response Is Condemned Before CNN's Statements

As the District Court accurately observed, "[r]eaction to [the Response] appeared almost instantaneously online." D.E.290 at 6. Multiple major news organizations recognized that the Public Interest Argument was the most newsworthy argument Dershowitz raised and focused their coverage on that part of the Response. ABC News, CBS News, Axios, and an NBC affiliate – among others – immediately posted Tweets containing the Public Interest Argument (often with a corresponding video clip). *See* D.E.271-134; D.E.271-135; D.E.271-137 at 13, 61. Just minutes after Dershowitz delivered the Response, the *Washington Post* updated

---

but the video recording of Dershowitz's Response makes clear that he concluded his remarks with these words. D.E.221 (Ex.30) at 16:26; D.E.235-1 ¶31.

its impeachment live-blog with an entry headlined "Dershowitz argues that a president is immune if he views his reelection as in the public interest." D.E.271-131 at 12. Likewise, at 3:35 p.m. on January 29, 2020, the *New York Times* tweeted that Dershowitz "argued that anything a president does to get re-elected could be considered in the nation's interest and is therefore not impeachable." D.E.271-137 at 45; *see also* D.E.271-130 at 14-15; D.E.271-65.

A tidal wave of criticism continued throughout the day. At 3:57 p.m., *Business Insider* posted that "experts and critics of the president immediately took issue with Dershowitz's argument which suggested the president's defenders believe Trump can do anything he wants in service of his own political interests." D.E.271-158 at 5. At 4:22 p.m., an MSNBC article called the Response "crazypants bonkers" and expressed concern Dershowitz's rationale would allow a president to abuse his powers. D.E.271-133 at 3. The *Washington Post* reported that Republican senators were "scrambl[ing] to rationalize Alan Dershowitz's argument that a president can do anything to secure his reelection if he believes his being president serves the public interest." D.E.271-131 at 10. At 5:29 p.m., the British *Daily Mail* published an article titled "ANYTHING Donald Trump does to get himself re-elected is UNIMPEACHABLE says Alan Dershowitz - because he believes it is in the public interest." D.E.271-157. Commentators and journalists – from NAACP Legal Defense Fund president Sherrilyn Ifill to former Republican Congressman Joe

Walsh to chess grandmaster Garry Kasparov – reacted in real time on social media to express similar sentiments, warning that accepting Dershowitz's argument would have cleared Nixon of wrongdoing and would turn the president into a monarch. D.E.271-137 at 4, 9, 17, 23, 56, 66, 68, 72, 84.

### G.    CNN's Statements at Issue

#### 1.    Anderson Cooper Full Circle – 6:33 p.m.

Only after Dershowitz's Response had been aired live in full by CNN, and had been widely criticized, did CNN publish any of the content at issue here. The first statement was at 6:33 p.m. on the online program Anderson Cooper Full Circle, where Anne Milgram, the former Attorney General of New Jersey (and current DEA Administrator) answered questions from Cooper and the show's viewers. D.E.235-1 ¶¶41, 52.

Supervising producer Chuck Hadad put the show together. Using his own independent judgment, he understood Dershowitz's Response to be newsworthy, but, at five minutes, it was too long to include in its entirety. *Id.* ¶43. Hadad supervised the creation of a clip centered around Dershowitz's Public Interest Argument, which Hadad believed "accurately represented [Dershowitz's] argument and got to … the crux, the most newsworthy moment."[4] D.E.287-4 at 58:8-13.

---

[4] The clip contained the Public Interest Argument, and then cut to the Sole Corrupt Motive Argument. D.E.271-2 ¶¶16-17.

11

Hadad supervised the drafting of the question for Milgram on the topic, which he observed was "tearing up the internet right now." D.E.235-1 ¶47; D.E.271-43 at 2.

Meanwhile, Cooper, who watched the Response in full (D.E.235-1 ¶48), thought anyone with "any sense of news judgment" would – and did – focus on the Public Interest Argument. D.E.287-3 at 88:15-89:3. Milgram also independently reviewed the Response and thought it articulated an expansive view of presidential power. D.E.235-1 ¶51. Milgram and Cooper said:

> *Milgram*: What's also really interesting though is that this is actually a step further than some of the arguments that the president's lawyers made in their trial brief when they basically said that look, this was all within the president's authority. The president has the authority to do whatever he wants in foreign policy. Basically sort of saying even if he benefits personally and they didn't say that part explicitly, but even if he benefited personally, it would be okay. And all they said was the president has vast authority. This view of the executive power that Dershowitz basically announced today would make the president a king. It would put the president beyond the rule of law. And, you know, you and I are talking about a quid pro quo here of exchanging, withholding military aid. But we could think of a lot of other things that there is no version, you know, could you kill your opponent, could you, you know, leak dirt on someone. There's countless –

> *Cooper*: There's no rules.

> *Milgram*: There's no limit to basically how badly behaved people could be. And they could actually commit crimes, which we know, you know, Dershowitz is essentially saying it doesn't matter what the quid pro quo is as long as you think you should be elected. That, it's never been announced in the law. I've never heard anyone else argue it. It cannot possibly be right.

12

D.E.271-53 at 4-5. Hadad, Cooper, and Milgram believed the statements made and the clip used were fair and accurate. D.E.235-1 ¶¶53-54.

### 2. Lockhart on Erin Burnett OutFront – 7:11 p.m.

At 7:11 p.m. during an appearance on the Erin Burnett OutFront show ("EBOF"), Joe Lockhart, former press secretary to President Clinton, made the second statement at issue. *Id.* ¶¶55, 65. In preparing for the episode, Executive Producer Susie Xu watched the Response live. *Id.* ¶¶56-57. She believed it was newsworthy, a belief affirmed by an exchange between Wolf Blitzer and Jake Tapper on CNN. *Id.* Xu requested that a member of her staff edit a clip focusing on the language discussed by Blitzer and Tapper but adding more context than what they had paraphrased. *Id.* ¶59. In Xu's independent editorial discretion, the clip she used – which contained the entire Public Interest Argument – was fair and accurate. *Id.* ¶¶59-60.

Meanwhile, Lockhart watched the Response live at his home and, before discussing the Response with anyone at CNN, tweeted several times criticizing it, stating that Dershowitz was making a "crazy" and "corrupt argument" that if President Trump "thinks it[']s in the public interest for him to be reelected … he can do whatever he wants." D.E.271-63 at 3. Lockhart then appeared on EBOF on a panel with two legal analysts and political commentator Scott Jennings. During the panel, Lockhart said:

13

I mean, having worked in about a dozen campaigns, there is always the sense that, boy, if we win, it's better for the country. But that doesn't give you a license to commit crimes or to do things that are unethical, so it was absurd.

And what I thought when I was watching it was this is un-American. This is what you hear from Stalin. This is what you hear from Mussolini, what you hear from authority and from Hitler, from all of the authoritarian people who rationalized and in some cases, genocide, based on what was in the public interest. It was startling and I still can't believe he went on the floor of the Senate and made that argument.

D.E.271-67 at 6. Jennings criticized Lockhart for comparing Trump to dictators, and

Lockhart responded:

[T]hat argument, that rationalization is exactly the rationalization that these authoritarian dictators made, which is we will do these things, because – yes, they're in my interest, but it's in the public interest…. [I]t is that argument that's so dangerous that you can commit any act as long as in [your] head you believe it's good for the country ….

*Id.* at 7. Lockhart holds that his statement was "an argument and opinion that I believe is appropriate, and it is an argument and an opinion that I believe today." D.E.287-5 at 66:7-11.

### 3.    Begala's Opinion Column – 8:56 p.m.

The third allegedly defamatory statement is an opinion column written by Paul Begala. Begala watched the entire Response live and was taken aback by Dershowitz's argument. D.E.235-1 ¶¶69-70. As a result, at 4:01 p.m., before being contacted by CNN, he tweeted that the argument was "Akin to Nixon telling David Frost, 'If the President does it, it isn't illegal.' Only this time it's 'If the President

14

thinks it will help his re-election, and he thinks his re-election helps the country, it isn't illegal.'" D.E.271-141 at 2. At 4:41 p.m., he got an email from Pat Wiedenkeller, a CNN opinion editor, who watched the Response live and asked him to write an opinion column about it. D.E.235-1 ¶68.

Begala responded "on it," and submitted a draft of the column that was published at 8:56 p.m. *Id.* ¶¶68, 72-73. Dershowitz alleges he was defamed by the following language:

> The Dershowitz Doctrine would make presidents immune from every criminal act, so long as they could plausibly claim they did it to boost their re-election effort. Campaign finance laws: out the window. Bribery statutes: gone. Extortion: no more. This is Donald Trump's fondest figurative dream: to be able to shoot someone on Fifth Avenue and get away with it.

D.E.271-144 at 3. Begala stands by his interpretation of the Response and still holds that opinion now. D.E.235-1 ¶75.

A video clip containing the Public Interest Argument (followed by the Blitzer-Tapper discussion) was later added to the webpage with the Begala column. *Id.* ¶77. That clip was edited by Brett Harman, a video programming producer at CNN, although it was not cut specifically for Begala's column. *Id.* Harman independently selected which portion of the Response to use, and believed the clip was fair and accurate. *Id.* ¶79. Harman did not communicate with either Wiedenkeller or Begala about the clip.

### 4.    Berman on New Day – January 30, 6:17 a.m.

The next challenged statement was made by John Berman on New Day at 6:17 a.m. on January 30. Berman co-anchored New Day (CNN's morning show) and had watched the Response live. *Id.* ¶82. Berman was surprised by the Response because it was a "new argument," both from the President's legal team and from Dershowitz in particular. D.E.287-2 at 102:18-23; 108:7-17; 129:4-7. A clip containing the Public Interest Argument was prepared by New Day producers, and Berman instructed his team to also cut a clip of the Greatest President Argument.[5] D.E.235-1 ¶85. Berman and producer Izabella Povich, who had ultimate responsibility for the content of New Day, both testified they believed the clips were fair and accurate. *Id.* ¶88.

Dershowitz alleges he was defamed by Berman's statement that "the president's defense team seems to be redefining the powers of the president, redefining them towards infinity," and that "if you look at what [Dershowitz] says there, it blows your mind. He says if a president is running for re-election because he thinks getting elected will help America, he can do anything, anything. And that

---

[5] Berman's email with this instruction began, "Dersh-o-nuts...need this for all panels." D.E.271-145. Berman testified that he used the phrase "Dersh-o-nuts" because, while he respected Dershowitz as a lawyer in other contexts, he thought the argument in the Response was "alarming" and a "stunning expansion" of the bounds of presidential power. D.E.287-2 at 156:23-157:8, 159:3-8.

redefines the presidency and, frankly, redefines America." D.E.271-36 at 7. Berman

testified, "I believed then, and I believe now, that we presented that in an accurate

way." D.E.287-2 at 108:15-17.

## H. Numerous Legal Experts Interpreted the Response the Same Way CNN Did

Later, the Response was met with a chorus of further condemnation from legal

experts and scholars independent of CNN, who interpreted the Response the way

CNN commentators and journalists did. D.E.235-1 ¶¶95-97.[6] In fact, nearly 200 law

professors and constitutional scholars sent a letter on January 30 to the Senate to

repudiate Dershowitz's Response because his arguments would "give the president

*carte blanche* to corrupt American electoral democracy." D.E.271-150 at 4;

D.E.235-1 ¶98.

## I. Dershowitz Appears on CNN

Unhappy with the coverage of his Response, on January 30, Dershowitz took

to Twitter to denounce "CNN, MSNBC and some other media" that "willfully

distorted [his] answers." D.E.271-151 at 14. That same day, he published an opinion

piece in *The Hill* entitled "I never said president could do anything to get reelected,"

---

[6] Erwin Chemerinsky stated that Dershowitz's argument was "absurd and outrageous," and meant that "a president could break any law or abuse any power and say that it was for the public interest because the public interest would be served by his or her election." D.E.271-146 at 4.

17

in which he claimed "the media" was "deliberately distorting and mischaracterizing" his argument. D.E.271-110 at 158, 163-64.

CNN gave Dershowitz multiple opportunities to explain on air why he thought he had been misinterpreted. On January 30, Dershowitz was interviewed by Blitzer for nearly 15 minutes, during which he criticized CNN for "distorting" his argument, and sat for a pretaped 18-minute interview on a different CNN show later that night where he expressed the same grievances. D.E.235-1 ¶¶100-01; D.E.221 (Exs. 96, 98, 99). Dershowitz was also asked to appear on Cooper's show, but did not reply. D.E.235-1 ¶102.

## II.    Procedural History

Dershowitz filed this action asserting one count of defamation based on the statements by CNN's commentators.[7] D.E.1; D.E.66.

---

[7] Despite Dershowitz's repeated pronouncements that CNN's video clips were "doctored" and "bowdlerized" (Br. at 2, 27, 34), he does not assert that the clips themselves were defamatory, nor could he, since they are privileged as fair reports of a government proceeding. *See* D.E.21 at 6 ("Plaintiff did not file a lawsuit complaining that CNN aired only a portion of Professor Dershowitz's senate floor argument. Had CNN ... showed the truncated clip and moved on, then it might arguably fall under the fair report privilege."); D.E.28 at 9 ("Dershowitz does not dispute that the privilege would probably apply if CNN had merely played the truncated clip without further comment. But that is not Dershowitz' claim."); *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 502 (Fla. 3d DCA 1993) (fair-report privilege protects "fair abridgement" of official proceeding). Accordingly, his defamation claim is based on the commentators' statements, not the clips themselves.

On April 4, 2023, the District Court granted CNN's motion for summary judgment. D.E.290. As is oft repeated in Dershowitz's brief, the District Court criticized CNN's commentary as reflecting "foolishness" and "apathy," and questioned the *Sullivan* standard, suggesting it was outdated and should be overruled. Despite this two-fold criticism, the District Court held that Dershowitz had not met his burden to raise a triable issue as to whether CNN published any statement with "actual malice." This appeal followed.

## STANDARD OF REVIEW

An order granting summary judgment is reviewed de novo. *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 943 (11th Cir. 2017). This Court may affirm summary judgment "on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court." *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) (citation omitted). An appellee may also "raise alternative arguments that were *rejected* by the district court." *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1343 (11th Cir. 2009) (emphasis added).

## SUMMARY OF THE ARGUMENT

This Court should affirm the grant of summary judgment to CNN on multiple grounds. First, as the District Court correctly held, "[a]fter full discovery, extensive briefing, and oral argument," Dershowitz failed to raise a triable issue of fact as to

actual malice. D.E.290 at 17-18. On appeal, Dershowitz tries to convince this Court to reverse the District Court's decision by distorting the law and misstating the facts. Mostly, though, Dershowitz argues as if this is an appeal of a motion-to-dismiss decision, and not summary judgment, proposing that there *could* have been facts to support his theory. But this is an appeal on summary judgment and the facts have been developed. Applying the correct law to the actual undisputed facts adduced in discovery, the decision below should be affirmed because CNN did not act with actual malice.

This Court can also affirm on alternative grounds: Dershowitz's claim fails because the commentators' statements were non-actionable expressions of political opinion based on fully disclosed facts, which were included within each publication and were widely known to the public in any event. Finally, Dershowitz cannot show that the claimed damage to his reputation was proximately caused by CNN's statements as opposed to other factors.

## ARGUMENT

Dershowitz was required but failed to demonstrate the elements of defamation: (1) publication of a provably false statement of fact (as opposed to pure opinion) to a third party; (2) the statement was defamatory; (3) falsity; (4) actual malice; and (5) actual damages. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)).

I.     **The District Court Correctly Held that Dershowitz Could Not Prove Actual Malice**

In a public-figure defamation action, "the appropriate summary judgment question [is] whether the evidence in the record could support a reasonable jury finding either that the plaintiff has shown actual malice by clear and convincing evidence or that the plaintiff has not." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). "Actual malice" does not mean common-law malice in the sense of ill will or spite; it means knowledge of falsity or reckless disregard for the truth. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Moreover, "reckless disregard" does not mean recklessness in the objective sense of gross negligence. It is, instead, a purely "subjective test" that addresses the defendant's state of mind. *Turner*, 879 F.3d at 1273. Essentially, "reckless disregard" means the defendant actually subjectively believed a statement was very likely false, but went ahead and published it anyway. *Id.* ("[The test] focus[es] on whether the defendant 'actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false.'"). Dershowitz was required to show that CNN "in fact entertained serious doubts as to the truth" of its reporting. *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021) (quoting *Berisha v. Lawson*, 973 F.3d 1304, 1312 (11th Cir. 2020)). This standard is

so high that, in reviewing cases against media defendants brought by public figures, this Court last found a triable issue on actual malice in 1983.[8]

Here, the District Court granted CNN's summary-judgment motion because "[t]his record contains no proof that any of CNN's commentators or producers either entertained 'serious doubts as to the veracity' of the reports or were 'highly aware that the account was probably false.'" D.E.290 at 9. To the contrary, as the District Court recognized, CNN

> produced undisputed evidence that each of the challenged publications were individually edited and produced; there was no scheme to 'falsely paint Dershowitz as a constitutional scholar and intellectual who had lost his mind.' The producers and hosts responsible for each of the four clips at issue all testified that they considered Dershowitz' comments newsworthy; they did not consider the Illegal Quo Line as a qualification or alteration of the Public Interest Argument; and they believed the clips as presented were fair and accurate.

*Id.* at 9-10.[9] This conclusion is inescapably correct.

---

[8] *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) (affirming dismissal for failure to plausibly plead actual malice); *Berisha*, 973 F.3d at 1312; *Klayman v. City Pages*, 650 F. App'x 744, 752 (11th Cir. 2016) (affirming summary judgment); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1244 (11th Cir. 1999); *Meisler v. Gannett Co.*, 12 F.3d 1026, 1030 (11th Cir. 1994); *Silvester v. Am. Broad. Cos.*, 839 F.2d 1491, 1498-99 (11th Cir. 1988). *Cf. Hunt v. Liberty Lobby*, 720 F.2d 631, 642-45 (11th Cir. 1983).

[9] Dershowitz's boilerplate response to the testimony in CNN's Statement of Undisputed Material Facts was to repeatedly dispute its credibility. D.E.260-2 at 8-20. As the District Court correctly found, "[t]his is not a proper factual or legal response to an asserted statement of undisputed fact," and "[s]imply stating the

Each speaker testified they reached their own independent conclusions about the Response by watching it live, and not based on any of the clips. D.E.235-1 ¶¶51, 65, 71, 78, 90. They did not speak to one another or Jeff Zucker (then-president of CNN) about their statements, and were never told to adhere to a particular narrative about Dershowitz. *Id.* ¶¶51, 62, 65, 72, 89.[10] And each of the individuals responsible for the content of the clips (Hadad, Xu, Harman, and Berman) testified they selected the clips based on their own, independent editorial judgment because they believed the clips were newsworthy, fair, and accurate. *Id.* ¶¶42, 44-45, 48, 57, 79-80, 82, 85. They also testified that each of their individually made decisions not to include the Illegal Quo Line in the various clips was to cut them for length, not due to any "deliberate" effort to "omit" an "essential" portion of Dershowitz's Response (D.E.66 ¶¶8-9). *See* D.E.235-1 ¶¶43, 45, 59, 81, 84.[11] They did not think the Illegal

_____

evidence is 'scripted and self-serving' does not meet [Dershowitz's summary-judgment] burden." D.E.290 at 10.

[10] While Berman's executive producer forwarded him an email from Zucker discussing Dershowitz, Berman received the email after the segment had already been written. D.E.235-1 ¶92. Berman testified that he made his decisions before he received the email. *Id.*

[11] *Cf. Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues and public officials – whether fair or unfair – constitute the exercise of editorial control and judgment."). Other outlets – including ABC, CBS, and the *New York Post* – also clipped or quoted the Public Interest and/or Greatest President Arguments without including the Illegal Quo Line. D.E.271-134; D.E.271-135; D.E.271-160; D.E.235-1 ¶36.

Quo Line was "essential" because they did not understand it to qualify the Public Interest Argument. *Id.* ¶¶45, 59, 81, 84.

In sum, each decisionmaker independently determined which moments from the Response were the most newsworthy, and either independently edited clips to illustrate those moments or independently commented on what they believed were the most important points of the Response. And all testified without equivocation that they believed the clips and the statements were fair and accurate – the very opposite of actual malice. *Id.* ¶¶46, 53-54, 60-61, 75-76, 79, 88, 91, 94.

Finally, CNN invited Dershowitz on air the next day to clarify his Response. This fact alone undercuts any claimed actual malice. *See, e.g.*, *Freedom Newspapers of Tex. v. Cantu*, 168 S.W.3d 847, 858 (Tex. 2005) ("prompt follow-up article quoting [plaintiff's] version of his remarks and the opinions of his supporters is evidence of the absence of actual malice"); *Michel*, 816 F.3d at 703.

In light of these "[p]rofessions of good faith," Dershowitz was required to point to clear and convincing evidence that the statements were

> [f]abricated by the defendant, … the product of his imagination, or … based wholly on an unverified anonymous telephone call [or that] the publisher's allegations [were] so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*Michel*, 816 F.3d at 703 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)). As the District Court correctly held, he did not do so. To get around this conclusion on appeal, Dershowitz in his brief misstates the law and distorts the facts.

## II.        Dershowitz Misstates the Law

Dershowitz profoundly misstates the law. ***First***, Dershowitz argues that granting summary judgment on actual-malice grounds violated his Seventh Amendment right to a jury trial. Br. at 21-22, 36. "The Supreme Court made clear long ago that 'summary judgment does not violate the Seventh Amendment.'" *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 919 (11th Cir. 2018) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979)); *see also Garvie v. City of Ft. Walton Beach*, 366 F.3d 1186, 1190 (11th Cir. 2004) (characterizing similar Seventh Amendment argument as "very misleading"). And this Court has not hesitated to affirm summary judgment on actual malice where the plaintiff did not put forth sufficient evidence to meet his burden. *See supra* note 8.

In fact, the Supreme Court has been clear that, in the defamation context, summary judgment for the defendant must be granted "if the evidence presented [by the plaintiff] is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Anderson*, 477 U.S. at 254. Dershowitz was required to "set forth specific facts showing that there is a genuine issue for trial" by presenting "concrete," "affirmative evidence." *Id.* at 256-57. He

cannot rely on conclusory statements, speculation, personal beliefs, or unsupported assertions, nor will a court "presume" "missing facts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990). As the District Court correctly found, Dershowitz did not bring forth any "concrete," "affirmative evidence" showing that any of the responsible individuals had knowledge that the statements were false or a high degree of awareness of probable falsity.

Dershowitz nevertheless insists summary judgment was inappropriate because, under the Seventh Amendment, "juries … are the ultimate arbiters of past events, including the parties' state of mind," and weighing credibility is a "jury function." Br. at 20, 36. He further hypothesizes that a juror might "find that CNN's witnesses [we]re lying through their teeth." *Id.* at 35. But this argument was expressly rejected in *Anderson*, where the Supreme Court held that a plaintiff cannot "defeat a defendant's properly supported motion for summary judgment … without offering any concrete evidence from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial … of legal malice." 477 U.S. at 256. *Anderson* expressly bars Dershowitz's argument.

***Second***, throughout his brief, Dershowitz mischaracterizes the actual-malice standard. At the outset, he claims "falsity" alone can evince actual malice. Br. at 24. But falsity is a separate element from actual malice, *see, e.g.*, *Turner*, 879 F.3d at

1262, and cannot, by itself, establish actual malice. *Tobinick*, 848 F.3d at 946. In addition, there has been no determination that the statements are false, and CNN contests any such conclusion.

Dershowitz next attempts to recast the actual-malice standard as a heightened form of negligence, asserting that reckless disregard "is … only negligence raised to a higher power," which, he contends, is a "quintessential jury matter of degree." Br. at 34 (citation omitted). That is flatly incorrect. As discussed above, both the Supreme Court and this Court have repeatedly held that "reckless disregard" in this context is a purely "*subjective* test" that looks to "whether the defendant '*actually* entertained serious doubts as to the veracity of the published account, or was *highly aware* that the account was probably false.'" *Turner*, 879 F.3d at 1273 (emphases added) (quoting *Michel*, 816 F.3d at 702-03); *see also St. Amant*, 390 U.S. at 731 ("There must be sufficient evidence to permit the conclusion that defendant in fact entertained serious doubts as to the truth of his publication."); *Meisler*, 12 F.3d at 1030 ("[N]egligence is not the appropriate standard for proving actual malice."). In fact, the Supreme Court is clear that gross negligence – or as Dershowitz put it, "negligence raised to a higher power" – does not establish the reckless disregard necessary for actual malice. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) (actual malice not established by "extreme" or even "highly

unreasonable" "departure from professional standards"). Actual malice is not an objective standard.

Dershowitz is, therefore, simply wrong when arguing that actual malice is a "highly dynamic concept" satisfied by objective criteria like the "resources at [the news organization's] disposal, and the expertise of its reporters and commentators." Br. at 34. And he is likewise incorrect to suggest that the actual-malice inquiry has anything to do with how a "reasonable reader" would purportedly interpret the Response. *Id.* at 38. Arguments regarding what a similarly situated news organization "should be aware of" and "what a reasonable person would think" relate to an "objective [negligence] standard, of the kind [the Supreme Court] ha[s] rejected" under the First Amendment. *Counterman*, 143 S. Ct. at 2117 n.5.

Dershowitz finally claims that the actual-malice standard should not protect the "foolish" or "apathetic" journalism he claims was present here. Br. at 30. For the avoidance of doubt, regardless of the District Court's characterization of the commentary, there was no sloppy reporting here. But even if there were, the Supreme Court decades ago rejected this same argument, holding that, even if the actual-malice "test puts a premium on ignorance," "the stake of the people in public business and the conduct of public officials is so great" that an objective reasonableness standard would not adequately protect against the chill of "self-censorship" that would arise from expanded liability. *St. Amant*, 390 U.S. at 731-32.

Dershowitz's attempt to pin liability on foolishness or negligence (which he did not establish in any event) is foreclosed by the First Amendment.

*Third*, Dershowitz strains to place this case within the framework of *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), based on "the truncated video clips."[12] Br. at 25. But *Masson* held only that there could be actual malice where a magazine journalist deliberately placed quotation marks around words she knew the interviewee never said – and which "material[ly] change[d]" what the subject did say. 501 U.S. at 517. Dershowitz does not claim that CNN *misquoted* him or otherwise reported that he said specific *words* he did not say – nor could he, since the videos show Dershowitz actually speaking in the Senate. Rather, he argues the clips did not show *enough* of his Response and the commentators *misinterpreted* the substance of his argument. The issue in *Masson* was not that the article included only some of the verbatim words the plaintiff said – it was that the article purported to "quote" words that the plaintiff never spoke. *Id.* at 502.[13] *Masson* does not help Dershowitz at all.

---

[12] *Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010), which Dershowitz also cites to support his argument, dealt only with falsity, not actual malice.

[13] *Masson* distinguished the situation presented in that case from cases like this, which come under the Supreme Court's "protection for rational interpretation" in *Time, Inc. v. Pape*, 401 U.S. 279 (1971). 501 U.S. at 519; *see infra* Argument IV.

*Fourth*, Dershowitz tries to manufacture an "inter-circuit conflict" based on decades-old decisions from the Second and Third Circuits. He cites *Goldwater v. Ginzburg*, 414 F.2d 324 (2d Cir. 1969), and *Schiavone Construction Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988), for the proposition that, when a defendant "simply delete[s] language that cast[s] a very different and more benign light on the facts he reported" (*id.* at 1092), that can support a finding of actual malice, and argues that is "analogous" to this case. Br. at 39. The claimed circuit split is a phantom one. In the six decades since *Goldwater* and the four since *Schiavone*, the law has developed in all Circuits – including the Second, Third, and most relevantly this one – in a manner wholly consistent with the decision below. *See, e.g.*, *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 126 (2d Cir. 2013); *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001); *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744 (4th Cir. 2023); *Tobinick*, 848 F.3d at 946; *Coral Ridge*, 6 F.4th at 1253 & n.8.

And *Schiavone* and *Goldwater* are inapposite. In *Schiavone*, the defendant reported – based on an FBI memo – that the plaintiff's name appeared in FBI files in a manner suggesting mafia connections, despite a statement in the same memo explicitly noting that "none of these [appearances in the files] suggested any criminality, or organized crime associations." 847 F.2d at 1072. The reporter testified he had seen the unambiguously exculpatory statement, but excluded it from the article because he did not believe it. The court held this could show actual malice.

*Id.* at 1092. In other words, (1) there was a concrete fact that directly and unambiguously contradicted the alleged defamatory statement, and (2) the reporter subjectively knew that fact contradicted the defamatory statement, but elected to disregard it. Dershowitz has not established that either factor is present here.

While Dershowitz alludes generally to "key portions" of the Response or his January 27 opening that CNN "omitted" (Br. at 40), as discussed above, he never actually says what they are. Instead, he repeatedly resorts to rewriting the Response to make the purported "qualifiers" appear unambiguous and clear – when, by his own admission, they were not. *See infra* Argument IV. And he has no evidence showing that any CNN decisionmakers were subjectively aware that these other "key portions" actually contradicted their statements, and omitted those facts in the face of that knowledge. On the contrary, the uncontroverted testimony confirms that <u>no</u> CNN witness viewed the Illegal Quo Line (or any other part of the Response or Dershowitz's arguments on January 27) as contradicting their interpretation of the Response, or as qualifying the Public Interest or Greatest President Arguments. *See infra* Argument III.

*Goldwater* is even less relevant. The plaintiff there had contemporaneous correspondence and party admissions that the defendants in fact had a "preconceived" plan to publish a magazine article casting aspersions on the plaintiff's psychological fitness, and carried out the research and writing of the

publication with the acknowledged goal of conveying that message. *See* 414 F.2d at 328-31. The court held that this willful blindness supported a finding of actual malice. *Id.* at 336-37. There is no such evidence here.

On the contrary, CNN invited pushback on its reporting. In the EBOF segment, Jennings immediately questioned Lockhart's statement. D.E.271-67 at 6. And CNN let Dershowitz spend upwards of a half-hour – a huge amount of time in news broadcasting – telling the world how CNN had "distorted" what he said on January 29. D.E.235-1 ¶¶100-01. As even Dershowitz acknowledges, "reporting perspectives contrary to the publisher's own should be interpreted as helping to *rebut* … the presence of actual malice." Br. at 42 (emphasis added) (quoting *Michel*, 816 F.3d at 703). That is precisely what happened here.

**Lastly**, despite being a self-proclaimed "very strong supporter" of the First Amendment (D.E.287-9 at 112:9-23), Dershowitz "suggests that the *Sullivan* line of cases should be reconsidered, reframed, and perhaps overruled." Br. at 53. Of course, this Court cannot overrule Supreme Court precedent. *See, e.g.*, *Coral Ridge*, 6 F.4th at 1253 n.9.

But even beyond Dershowitz's change of heart on the decision he once hailed as important to preserving democracy, his arguments are profoundly disingenuous. Most egregiously, he relies on criticism of the actual-malice standard by Justice Thomas in *Counterman*, without disclosing that it appeared in a *dissenting opinion*.

*See* Br. at 52-53; 143 S. Ct. at 2133 (Thomas, J., dissenting). In reality, six Justices in *Counterman* repeatedly cited and reaffirmed *Sullivan*. The Supreme Court unequivocally stated: "a public figure cannot recover for the injury [a defamatory] statement causes unless the speaker acted with 'knowledge that it was false or with reckless disregard of whether it was false or not.'" *Counterman*, 143 S. Ct. at 2115 (quoting *Sullivan*, 376 U.S. at 280). And the Court reiterated that the rule "is based on fear of 'self-censorship'—the worry that without such a subjective mental-state requirement, the uncertainties and expense of litigation will deter speakers from making even truthful statements." *Id.* (quoting *Sullivan*, 376 U.S. at 279); *see also id.* at 2131 (Sotomayor, J., concurring). *Sullivan* is *not* ripe for reconsideration – it was reaffirmed just last Term.

## III.    Dershowitz Misstates the Facts

Next, to the minimal extent Dershowitz engages with the undisputed facts, he distorts them.

***First***, Dershowitz attempts to establish actual malice by characterizing the testimony of the CNN representatives as "ostrich-like professions of ignorance" and "play[ing] dumb when forced to explain themselves under oath," such that a jury may well believe they are "lying through their teeth." Br. at 25, 35. As discussed above, a plaintiff does not raise a triable issue as to actual malice by merely arguing a jury might disbelieve the reporter. *See supra* p.26. And Dershowitz is simply

incorrect. CNN's witnesses did not provide rote answers denying actual malice, nor concede they were "foolish, apathetic, and inept." Br. at 36. Rather, they each cogently and persuasively explained exactly how and why they interpreted Dershowitz's Response as they did – including *why* they did not interpret the Illegal Quo Line to qualify the argument they understood Dershowitz to be making; *why* they did not believe Dershowitz's arguments two days earlier on January 27 contradicted their understanding of the new argument he raised in the Response; and *why* they continued to believe their interpretation was correct.

For example, Cooper testified that "everybody across the political spectrum focused on [Dershowitz] with this unveiling of this new rationale" opposing impeachment, and that he did not understand Dershowitz to be qualifying his more "dramatic" Public Interest and Greatest President Arguments with the single Illegal Quo Line "several paragraphs" earlier. D.E.287-3 at 88:15-89:3. Milgram testified that, "based on all of what [Dershowitz] said … and [her] legal training and experience," she reached the "opinion … that [Dershowitz] essentially said that a president could do virtually anything and avoid impeachment so long as they were acting in what they believed was the public interest." D.E.287-8 at 46:14-47:20. Lockhart emphasized that, from his "political perspective," Dershowitz's argument "was going to make this standard [for impeachment] so impossible to reach that the President is not going to be held accountable." D.E.287-5 at 50:22-52:23, 108:15-

20. Begala explained, "I did not hear Professor Dershowitz to say if the President is acting in his reelection interest and his action is not a criminal offense it's okay.… In fact, I heard the opposite." D.E.287-1 at 150:24-151:21. And Berman explained how the Greatest President Argument that concluded the Response "double[s] down" on the Public Interest Argument, and supports his interpretation that Dershowitz was advocating for his client that any action taken in the president's political interest is not impeachable. D.E.287-2 at 109:11-112:5, 116:15-118:16. Contemporaneous documents back up their testimony. D.E.271-63 at 3; D.E.271-141 at 2; D.E.271-145. Dershowitz's claim that CNN's testimony is questionable is not only legally insufficient, it is also wrong on the facts.

**Second**, Dershowitz relies on the same disproven allegations he made in his Complaint, that the commentary and selection of clips from the Response were part of a "coordinated effort, spearheaded by Jeff Zucker." Br. at 18, 29. But as the District Court accurately observed, Dershowitz failed to "present evidence that CNN's various clips and presentations were not the result of independent judgments." *Id.* at 29; D.E.290 at 9-10, 15-16.

Initially, the argument that CNN concocted a pre-conceived storyline would not show actual malice absent evidence of intentional falsification. *See Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 597 (D.C. Cir. 2016) ("[Plaintiff's] argument that

[defendant] had concocted a pre-conceived storyline . . . fails to establish actual malice.").

Moreover, the undisputed evidence shows there was absolutely no grand "conspiracy." Dershowitz rests his conspiracy theory on two faulty pillars. He points to (a) an email Zucker sent to a CNN commentator – who is wholly unconnected to the statements at issue – expressing his views about the Response, and (b) Zucker's discussion of the Response with producers on an editorial conference call – which the relevant commentators did not attend (*see* D.E.281-1 ¶13). Dershowitz claims these remarks by Zucker somehow mean that Zucker instructed the commentators to falsify information about him.

But there is no evidence that Zucker mandated that any of the speakers espouse any particular viewpoint – let alone a viewpoint they believed was inaccurate. Dershowitz produced no evidence, for example, that Zucker gave some kind of "[c]ommand[]" to report a particular perspective, no evidence the commentators learned of his views, and, most importantly, no evidence they thought such views were inaccurate. That was the kind of evidence Dershowitz was required, but failed, to produce. *See* D.E.235-1 ¶¶48, 51, 62, 65, 69, 71-72, 89-90.

Dershowitz next argues that the purportedly "remarkable similarity" among the commentators' statements and the accompanying video clips evidences "coordination." Br. at 29-30. But this argument is similarly unavailing. Bare

36

conjecture is not evidence that can raise a jury question. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Moreover, contrary to Dershowitz's claims, there was not a single "video clip" that CNN played "time and time again." D.E.66 ¶10. Instead, there were four clips of varying lengths that were each *independently* created by four different teams. D.E.235-1 ¶¶42-48, 57-59, 77-85. And none of the speakers spoke to each other or to Zucker. *See id.* ¶¶51, 62, 65, 72, 89. Dershowitz's theory is also contradicted by the fact that countless other news organizations immediately – before any of the allegedly defamatory statements from CNN – published nearly identical clips from the Response and expressed similar interpretations as CNN's commentators. *See supra* Counter-Statement of Case I.F. [14] If similar commentary suggests a "coordinated effort" to misrepresent Dershowitz's views, the global "conspiracy" runs far deeper than just CNN.

Dershowitz tries to analogize the purported "remarkable similarity" among the clips and views expressed by the commentators to the type of evidence courts consider in cases involving price-fixing collusion, substantial similarity between copyrighted works, and rejected asylum applications. Br. at 30-32. But these are

---

[14] A number of the speakers were aware that their interpretation was widely shared. *See, e.g.*, D.E.287-5 at 91:17-25 (Lockhart noting that "judging from comments [he] saw on Twitter, many others" shared his interpretation); D.E.287-1 at 190:25-191:4 (Begala: "I'm not the Lone Ranger.… Lots and lots of people … heard it the way I heard it.").

wholly inapplicable. This case involves news reporting and commentary on a breaking story of obvious national public interest, in which journalists across the media reported similar stories and provided similar analyses of the same events. Any shared interpretation of the Response does not reflect "coordination" among those journalists – it reflects coverage of a newsworthy event.

*Third*, Dershowitz concocts so-called "affirmative evidence" of actual malice, but as the District Court correctly recognized, this "evidence" consists of transparent distortions of the record.

In particular, Dershowitz twists Begala's deposition testimony to claim Begala admitted knowingly misstating Dershowitz's Response in his column. Br. at 48-49. As the District Court correctly held, "Dershowitz is clearly wrong in stating that Begala admitted speaking falsely." D.E.290 at 17. In fact, Begala simply testified that his column did not purport to quote Dershowitz, but instead expressed Begala's opinion on the impact of Dershowitz's argument:

> Q. Did you believe at the time that you wrote [your column] that that was an accurate, fair, and faithful characterization of Mr. Dershowitz's statements during the impeachment trial?
>
> A. No. I wasn't trying to – I wasn't saying this is what he said. I was saying this is what it would do. This is what others will do with that. This is what it will do. **I'm not quoting Professor Dershowitz. He didn't say anything like that, but what I'm saying is ... the argument he laid out will be abused to justify all manner of things by politicians seeking their reelection.** I don't say Dershowitz says this. I say this is a doctrine that would do this. I think it's an important distinction.

38

D.E.287-1 at 108:7-23 (emphasis added); *see also id.* at 129:14-130:7. And Begala

repeatedly and emphatically stood behind the opinion he expressed in his column.

*See id.* at 104:22-105:23, 119:16-120:25, 150:24-151:21, 184:25-185:9.

Likewise, Dershowitz distorts Begala's acknowledgment that Dershowitz said

a president could be impeached for receiving a bribe in his pecuniary interest. Br. at

49. Begala's full testimony affirms that Begala believes the Response would allow

presidents to commit bribery that is *not* in their pecuniary interest in pursuit of

reelection:

> [Dershowitz] didn't rule out all bribery. Bribery goes two ways.... A
> president receiving a bribe advancing his pecuniary interest, Professor
> Dershowitz says that's impeachable. I agree. If I'm seek[ing] my
> reelection, I'm not going to take a bribe. I might offer one. I might give
> one, and that is in the national interest because I've got to be reelected
> or the union will collapse. The country will die. I have to be reelected,
> so I'm going to bribe – Hillary Clinton is going to call the governor of
> Pennsylvania and say I'm rich now and I'll give you $1 million bucks
> if you rig the vote count for me. Right? **That's clearly bribery, but
> it's not in her pecuniary interest. She's losing money, so that's
> what's so alarming about this, is that half of bribery is still allowed,
> I fear.... Bribery in pursuit of personal pecuniary interest, clearly
> out. That is impeachable.... Bribery in pursuit of my reelection,
> clearly in, and that's problematic to me ....**

D.E.287-1 at 121:10-123:5 (emphasis added). Begala repeatedly stood by his

opinion that Dershowitz's Response would allow presidents to get away with

bribery.

Dershowitz also contends that Milgram "ignored all the unambiguous

qualifiers" in the Response, and that she should have perceived them given her legal

credentials and familiarity with the impeachment proceedings. Br. at 51. Tellingly, Dershowitz does not identify these "unambiguous qualifiers." As explained below, the Response was – at best – rife with ambiguities, not "unambiguous qualifiers." In reality, Milgram testified that she based her opinion on "all of what Mr. Dershowitz said" (combined with her "legal training and experience"). D.E.287-8 at 38:7-9, 47:2-4. Dershowitz's supposed affirmative evidence does not exist.

***Finally***, Dershowitz's claim that his January 29 Response was somehow qualified by what he said two days earlier, on January 27, also does not establish that anyone at CNN doubted their interpretation. As the District Court correctly recognized, there was no obligation for CNN to add what is, at best, a "two-day old qualification" to its commentary on new arguments Dershowitz made in the Response. D.E.290 at 10. The Response, which "specifically focused *only* on the president's own political interest scenario" (*id.* at 14), was interpreted by CNN's commentators – and commentators across the media – as a *new* argument, not a gloss on the January 27 argument. *See, e.g.*, D.E.235-1 ¶¶49, 83; D.E.287-3 at 56:5-15, 61:3-25, 85:7-10, 88:15-89:3, 91:3-6 (Cooper); D.E.287-1 at 84:9-14, 110:5-9, 119:23-120:2 (Begala); D.E.287-2 at 102:18-23, 108:8-13, 109:22-25, 116:16-22, 118:10-16 (Berman).[15]

---

[15] On January 27, Dershowitz argued that a crime or crime-like conduct was *necessary* for impeachment, but he never said it was always impeachable. *Cf. United*

Dershowitz has produced no evidence of actual malice, and the decision should be affirmed.

## IV.    The Speakers Provided Rational Interpretations of an Ambiguous Argument

The District Court's determination that Dershowitz cannot prove actual malice finds further support in Supreme Court precedent holding that a speaker's "deliberate choice" of how to characterize an event that "bristled with ambiguities" is "not enough to create a jury issue of 'malice'" where the speaker "adopt[ed] one of a number of possible rational interpretations" of the ambiguous situation – even if that interpretation "arguably reflect[s] a misconception." *Pape*, 401 U.S. at 290. [16]

The Supreme Court has emphasized that the "considerations" underlying the actual-malice rule "apply with even greater force to the situation where the alleged libel consists in the claimed misinterpretations of the gist of a lengthy government document." *Id.* at 287, 291. Courts around the country accordingly "have held that a plaintiff does not create a jury issue of actual malice by demonstrating that a publisher misinterpreted his source material." *Liberty Lobby, Inc. v. Anderson*, 1991 WL 186998, at *8 (D.D.C. May 1, 1991); *see, e.g.*, *CACI Premier Tech., Inc. v.*

---

*States v. Gonzalez-Zea*, 995 F.3d 1297, 1304 n.7 (11th Cir. 2021) (noting fallacy of "conflat[ing] the concepts of what … is necessary … versus what is sufficient").

[16] *See also Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512-13 (1984).

*Rhodes*, 536 F.3d 280, 296 (4th Cir. 2008); *Zimmerman v. Allen*, 2014 WL 3731999, at \*8 (Fla. 18th Cir. Cit. June 30, 2014). "These cases establish that when a writer is evaluating or giving an account of inherently ambiguous materials …, the First Amendment requires that the courts allow latitude for interpretation." *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 315 (D.C. Cir. 1994).[17]

Here, Dershowitz's Response was, at best, "extravagantly ambiguous." *Pape*, 401 U.S. at 287. Dershowitz admitted that the Response was "spontaneous[]," he misspoke,[18] "people misunderst[ood]" and "made mistakes about" what he meant, and "[i]t's difficult to get all the nuances." D.E.287-9 at 403:6-11, 416:9-23, 433:19-24, 488:23. These admissions – coupled with the actual text of the Response – belie his continued insistence that his Response was "perfectly clear that a president who commits a crime *can* be impeached," even if his actions are motivated by his electoral interests. Br. at 38. Indeed, to make that assertion, his brief rewrites the text of what he actually said – adding caveats and clarifications that simply were not included in the Response.

---

[17] Dershowitz has argued that this principle applies only where the speaker describes the underlying event as ambiguous. D.E.260-1 at 21-23. But that assertion is contradicted by *Pape* itself, which holds that making a "deliberate choice" in interpreting an event or source cannot establish actual malice. 401 U.S. at 290. And in any event, some of the CNN commentators did find the Response ambiguous. *See, e.g.*, D.E.271-7 at 85:16-19; D.E.287-5 at 55:11-16; D.E.287-3 at 61:5-25.

[18] *See supra* Counter-Statement of Case I.E.

For example, Dershowitz claims the Response "made it quite clear that in a mixed-motive case – a case involving both political and personal interests – a president is immune from impeachment only if the quid pro quo '**does not involve personal pecuniary interest**,' *illegality, or corruption*." Br. at 45 (bolding in original; italics added). But, tellingly, the italicized words were not part of the Response.[19] In fact, in the actual Response, Dershowitz confined the definition of a "corrupt motive" to a "personal pecuniary interest," and asserted that a "mixed motive" that "partially involves electoral [interests]" "cannot be a corrupt motive." D.E.271-29 at 8. And the closing flourish of the Response was the Greatest President Argument, where Dershowitz declared without qualification that an act done based on a president's belief he is "the greatest President there ever was, and if I am not elected, the national interest will suffer greatly" "cannot be an impeachable offense." *Id.*

Dershowitz's assertions that "qualifiers" in the January 29 Response (or in his January 27 opening) do not help him either – if anything, they only make the

---

[19] Dershowitz unsuccessfully tried this gambit in the District Court. *See* D.E.290 at 13-14 (noting that "the transcript and video of Dershowitz' response does not include" the argument Dershowitz claimed to have made ("that a quid pro quo arrangement with a foreign leader was impeachable if it involved unlawful, illegal or corrupt – in other words – criminal conduct") "nor does [the Response] tie any such qualification to a quid pro quo done to protect the president's own political interest").

Response even more ambiguous. As CNN's witnesses observed, the Illegal Quo Line was a tossed-off, nonsensical tautology that was not linked in any meaningful way to the points he emphatically made throughout the rest of the Response.[20]

The Response was "extravagantly ambiguous" and CNN's interpretation was rational; this further reinforces Dershowitz's inability to show actual malice.

## V.  CNN's Statements Are Constitutionally Protected Opinion

In the alternative, this Court should affirm the judgment on the ground that CNN's statements are non-actionable opinion.[21] "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983). "[S]tatements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner*, 879 F.3d at 1262; *see also Milkovich v. Lorain J.*

---

[20] *See, e.g.*, D.E.287-1 at 150:24-151:21, 154:6-9 (Begala: "If he had carefully roped off criminal conduct, it would be a very different standard.… [H]e said if the quo is illegal, then it's unlawful. And I'm sorry …, but my answer to that is, duh."); D.E.287-3 at 90:15-91:7, 92:17-94:10 (Cooper: "If he wanted to qualify it all with that sentence, he would have put them together."); D.E.287-2 at 107:5-22 (Berman: "He didn't say that when he was making those two statements, he didn't qualify that exactly; that's not how I heard it when he said it out loud."); *see also* The Late Show with Stephen Colbert, YOUTUBE (Jan. 29, 2020), https://www.youtube.com/watch?v=cXXPRImhn_E&t=374s ("So, the only way it would be illegal is if it's…*illegal*.").

[21] CNN made this argument at the motion-to-dismiss stage, but the District Court declined to decide the statements were opinion, waiting for a more fully developed record. D.E.21 at 16.

*Co.*, 497 U.S. 1, 20-21 (1990). "When a speaker plainly expresses 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than … claim[ing] to be in possession of objectively verifiable false facts, the statement is not actionable.'" *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (citation omitted); *see also Sandmann v. N.Y. Times Co.*, 2023 WL 5274469, at *8 (6th Cir. Aug. 16, 2023) (holding that whether speaker "accurately interpreted" plaintiff's actions was not objectively verifiable). Further, "it is well settled in Florida that commentary or opinion based on accurate facts set forth in an article are not the stuff of libel." *Turner*, 879 F.3d at 1265 (citation omitted).

In deciding whether a statement is opinion, the court must "examine the statement in its totality and the context in which it was uttered or published." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379-80 (S.D. Fla. 2006) (citation omitted); *see also Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir. 2002). "Statements made in the course of a political debate are … more likely to be understood as opinion." *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1433 (8th Cir. 1989); *see also Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1017 (1st Cir. 1988) ("In the charged context of a debate over a matter of public concern, the reader will expect a certain amount of hyperbole and loose characterization – in short, a certain amount of opinion.").

Here, both the language and context of the statements make clear they constitute expressions of opinion. The statements appeared in panel discussion

programs and an opinion column that were overtly commenting on the impeachment trial. And the statements themselves are laced with language that informs "any reasonable reader [or viewer] that the conclusions contained within were the [speakers'] opinions." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1367-68 (S.D. Fla. 2016), *aff'd*, 879 F.3d 1254 (11th Cir. 2018).

- The **Cooper/Milgram Statements** contain rhetorical language including: "would make the President a king," and it's a "real head scratcher." D.E.271-53 at 4-5.

- The **Lockhart Statement** – which uses language like "un-American," "authoritarian," and "what you hear from Stalin, … Mussolini, … Hitler," (D.E.271-67 at 6) – is quintessential "rhetorical hyperbole." *Milkovich*, 497 U.S. at 20. In fact, Judge Singhal held that describing Trump as "Hitler-like" or "authoritarian" are not statements of fact in *Trump v. CNN*, 2023 WL 4845589, at *5 (S.D. Fla. July 28, 2023). *See also Daly v. Morris Publ'g Grp., LLC*, 2009 WL 5876239, *6-7 (Fla. 4th Cir. Ct. Mar. 17, 2009) (collecting cases in which courts rejected claims based upon comparisons to Hitler and other infamous Nazi war criminals).

- The **Begala Statement** appears in the "Opinion" section of CNN's website under "Political Op-Eds" and "Social Commentary" headings and includes an Editor's Note stating that Begala is a "Democratic strategist and CNN

political commentator," and "[t]he opinions expressed in this commentary are his." D.E.271-144 at 2. It also uses subjective language ("bonkers," "ludicrous"). *Id.* at 2-3.

- The **Berman Statement** uses rhetorical hyperbole, such as the argument Dershowitz "seems" to be making "blows your mind." D.E.271-36 at 7.

These subjective expressions of the speakers' points of view constitute non-actionable statements of "pure opinion," because they are "based on facts which are set forth in the publication [and programs] or which are otherwise known or available to the reader or listener as a member of the public": namely, the words Dershowitz spoke on the Senate floor in the Response. *Turner*, 879 F.3d at 1262. That is quintessential "pure opinion" based on explicitly disclosed facts.

The fact that the clips accompanying the commentaries did not include the entirety of the Response – and, in particular, did not include the Illegal Quo Line – does not remove the statements from the realm of protected opinion. The clips contained the Public Interest Argument exactly as Dershowitz made it on the floor of the Senate, and the commentators are allowed to offer criticism of that argument without prefacing it with his entire five-minute Response. *Cf. Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1306 (8th Cir. 1986) ("Accounts of past events are always selective, and under the First Amendment the decision of what to select must almost always be left to writers and editors."); *Larreal v. Telemundo of Fla., LLC*, 489 F.

Supp. 3d 1309, 1319-20 (S.D. Fla. 2000) ("media defendants can … 'summarize and focus publications as they choose,'" and "are 'under no obligation to include additional information that would portray [a] Plaintiff in a more favorable light'").

Dershowitz has argued disclosure of more of the Response – and, in particular, the Illegal Quo Line – would be necessary to constitute "fully disclosed facts," but even if that were true, the statements are still protected opinion. Florida law is clear that, "for an opinion to be pure and non-actionable, it need not necessarily be based upon facts that the communicator sets forth explicitly in the exact publication – facts 'otherwise known or available to the reader or the listener as a member of the public' will suffice." *Tillett v. BJ's Wholesale Club, Inc.*, 2010 WL 11507322, at *6 n.12 (M.D. Fla. July 30, 2010) (citation omitted); *see also Zambrando v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986) (statement is "pure opinion where the facts are already known to the audience"). Thus, in *Rasmussen v. Collier County Publishing Co.*, the court held that the defendant's editorials were opinion because they were "based on facts disclosed in the articles themselves or in the extensive coverage that [defendant] afforded to the … controversy." 946 So. 2d 567, 571 (Fla. 2d DCA 2006). In *From v. Tallahassee Democrat, Inc.*, the court held that statements criticizing the plaintiff's performance as a tennis pro were pure opinion because they were based on facts known in the "Tallahassee tennis community" at the "Winewood Country Club." 400 So. 2d 52, 57 (Fla. 1st DCA 1981). And in *Hay v. Independent*

*Newspapers, Inc.*, the court held that calling the plaintiff a "crook" was opinion based on facts in the article and criminal charges "known or readily available to the reader as a member of the public." 450 So. 2d 293, 295 (Fla. 2d DCA 1984).[22]

Here, there is no question that the facts on which the speakers based their opinions were known to the public. Dershowitz's arguments made on the floor of the Senate – and aired in their entirety live on CNN – are disclosed and do not need to be "d[u]g up." Br. at 36. The impeachment trial was the most important news story in America at the time, and was covered across all media, including TV, newspapers, online publications, and even ordinary social-media users. D.E.235-1 ¶¶23-25. Dershowitz's Response, in particular, was indisputably one of the biggest stories that day, and, even before the CNN statements, was highlighted in coverage by countless news organizations – much of which agreed with CNN's interpretation. *Id*. ¶¶34-39. The underlying "facts" that form the basis of the statements (including the Response in full) were indisputably "available" from both CNN and countless other media outlets and sources – far more so than, for example, the "tennis pro's situation at the Winewood Country Club" in *From*.

Lastly, Dershowitz has argued that the statements were not opinion because they contain a false fact – *i.e.*, he claims that the statements falsely attribute to him

---

[22] *See also Fortson*, 434 F. Supp. 2d at 1382; *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923-24 (M.D. Fla. 1996).

the argument that a president can commit crimes and not be impeached so long as he acted in his electoral interest. D.E.66 ¶8. But this alleged "fact" is a reasonable interpretation of the Response, as explained at length *supra* in Argument IV. The statements are therefore protected opinion under the principles articulated in *Moldea*, 22 F.3d at 315, in which the Court held that "when a reviewer offers commentary that is tied to the work being reviewed, and that is a supportable interpretation of the author's work, that interpretation does not present a verifiable issue of fact that can be actionable in defamation." *Id*. at 313.[23]

Ultimately, the clips show arguments Dershowitz made on the Senate floor in defense of the president, and the commentators discuss and criticize those arguments because, in their opinion, those arguments would allow the president to get away with any misconduct in pursuit of his reelection. CNN and its commentators *should* be discussing and criticizing the Response. For "whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). The

---

[23] *See also Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (book discussing two trials); *Safex Found., Inc. v. Safeth, Ltd.*, 531 F. Supp. 3d 285, 312-13 (D.D.C. 2021) (online statements based on public information); *Thomas v. L.A. Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002) (article on historical research and biography).

commentators' statements make clear they were speaking out because they believed Dershowitz was making an argument that was "surprising" (Cooper) and "blows your mind" (Berman), but also one they believed was "dangerous" (Begala) and "un-American" (Lockhart) and would make the President a "king" (Milgram). As Lockhart explained, "I was concerned about our democracy, and sometimes alarm bells … need to be rung." D.E.287-5 at 105:12-21. In Dershowitz's words, they were exercising their "freedom to speak, to write, to dissent, to seek a redress of grievances, to assemble, to doubt, to challenge" – and this "has always been central not only to democratic governance but to life itself. It is both a means and an end." ALAN DERSHOWITZ, TAKING THE STAND: MY LIFE IN THE LAW 105 (2019).

The statements are opinion, and summary judgment can be affirmed on that basis.

## VI.    Dershowitz Cannot Prove that CNN Caused His Claimed Damages

This Court can affirm summary judgment on the separate ground that Dershowitz cannot show that CNN's statements were the proximate cause of his claimed damages, as he must do under Florida law. *See Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266-67 (11th Cir. 2003) (affirming dismissal of defamation claims because plaintiff failed to prove actual damages); *see also Egwuatu v. Burlington Coat Factory Warehouse Corp.*, 2011 WL 2413833, at *5 (M.D. Fla.

June 10, 2011) ("No evidence in the record supports [plaintiff's] claim of damages resulting from any alleged defamatory statement made by [defendant].").

That is because Dershowitz has claimed his reputation was destroyed by numerous factors *besides* CNN's statements, including testifying that his entire reputation – professional and personal – was "destroyed" by Virginia Giuffre's allegations of sexual assault in 2014. D.E.235-1 ¶¶6, 11. Dershowitz also lamented that he had been previously ostracized for his defense of Trump and of Epstein. *Id.* ¶12; *see also id.* ¶¶34-39.[24] For this reason alone, Dershowitz will never be able to bear his burden of proving that the statements – as opposed to all these other things – were the proximate cause of his damaged reputation.

For this independent reason, the Court should affirm the judgment below.

## <u>CONCLUSION</u>

"The most significant difference between freedom of the press in the United States and elsewhere" is the safeguard embodied in *Sullivan*. ALAN M. DERSHOWITZ, TAKING LIBERTIES: A DECADE OF HARD CASES, BAD LAWS, AND BUM RAPS 63

---

[24] Last year, Dershowitz attributed his "cancellation by many individuals and institutions" "over the past several years" to "[t]hree events": "(1) I defended President Trump against what I believe was an unconstitutional impeachment; (2) I defended Jeffrey Epstein and helped him get a favorable plea bargain; (3) I was falsely accused of having sex with a woman, connected to Epstein, who I never met. These are the <u>only</u> three events that would possibly explain the cancellations." D.E.271-73 at 29.

(1988). "And there can be no more important safeguard for the freedom of the American public to obtain information necessary to the functioning of a democracy." *Id.* The CNN reporting at issue here fulfills that vital responsibility. For all the above reasons, the judgment below should be affirmed.

Dated: September 11, 2023

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP
By: */s/ Katherine M. Bolger, Esq.*
Katherine M. Bolger, Esq.
Email: katebolger@dwt.com
Raphael Holoszyc-Pimentel, Esq.
Email: rhp@dwt.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 489-8230

GUNSTER, YOAKLEY & STEWART, P.A.
George S. LeMieux, Esq.
Florida Bar No. 16403
Email: glemieux@gunster.com
Eric C. Edison, Esq.
Florida Bar No. 010379
Email: eedison@gunster.com
450 East Las Olas Boulevard, Suite 1400
Fort Lauderdale, Florida 33301
Telephone: (954) 462-2000

*Counsel for Defendant-Appellee*
*Cable News Network, Inc.*

## CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellee Cable News Network, Inc. hereby submits its Certificate of Compliance pursuant to Fed.R.App.P.32 and hereby certifies:

1.     This brief complies with the type-volume limitation of Fed.R.App.P.32(a)(7)(B)(i) because it contains 12,986 words.

2.     This brief complies with the typeface requirements of Fed.R.App.P.32(a)(5) and the type-style requirements of Fed.R.App.P.32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word 365 in a 14-point font, Times New Roman.

*/s/ Katherine M. Bolger*
Katherine M. Bolger

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically via CM/ECF on all counsel or parties of record this 11th day of September 2023.

*/s/ Katherine M. Bolger*
Katherine M. Bolger